Chief Justice Robertson
delivered the Opinion of the Court.
JohNsoN sued Lewis, as the endorser of a negotiable note, for five hundred dollars, drawn by R. H. Grayson, endorsed by Lewis to Johnson, and by the latter to the Bank of the United States.
Upon the general issue, the jury found a special verdict, upon which the court pronounced judgment in bar of the action.
Among other facts, the jury found, that the bank hacl obtained a judgment on the note ; issued a fieri facias, which was returned nulla bona, and then issued at ca. sa. in virtue of which Grayson was committed to the jail of Jefferson county, and there kept in confinement, until some time in 1822, when, without notice to the bank, vor its privity or consent, and without giving a schedule of his estate, or taking the oath of an insolvent debtor, he was liberated by the jailer, in consequence of an order given for that purpose by a justice of the peace ; and that, thereupon the bank sued Johnson, as its immediate endorser, recovered a judgment, and made the whole amount.
As the facts thus found are abundantly proved by record and other testimony, the only question which we shall consider, is, whether the bank pursued its legal and ordinary remedies in such a manner, as to entitle it to recourse upon its endorser (Johnson ;) for if it did not, with reasonable diligence, prosecute the ordinary remedies for coercing the debt before it resorted to Johnson, Lewis is absolved from legal liability. He undertook to be responsible, only on the condition that the ultimate *183 endorsee should use proper means, to make the amount of the note, and should, nevertheless, fail.
Due diligence is a question of law.
The Kentucky statute, abolishing imprisonment for debt, is not the law of the federal courts.
Jailer is bound to receive persons committed by authority of the U. S. and keep them until discharged by due course of the laws of the TJ. States.
If the jailer, without legal authority, discharge a debtor committed under ex’on, he becomes liable for the whole debt.
“ Due diligence ” is a question of law ; and the judgment of the law upon the facts of this case, is, that such diligence was not observed by the bank.
The statute (of 1821,) of this state, abolishing imprisonment for debt, did not apply to the federal courts, or federal process.
By the first section of an act of 1798, (2 Dig. 679,) it is made the duty of the jailer of each county in this Commonwealth, to receive into his jail any prisoner who may be committed under the authority of the United States, and to keep such prisoner safely until “ discharged by the due course of the laws of the United States.”
And the second section of the same act declares, that jailers shall be subject to the same “pains and penalties,” for every neglect of duty, (in such cases,) as they would incur for the like neglect in cases of commitment under state process.
According to the law applicable to federal process at the time Grayson was liberated, it was necessary that he should have given the creditor thirty days notice of his application, and also have taken an oath that he was not worth thirty dollars &c. and the justice of the peace had no power to discharge him.
It is evident, therefore, that the jailer had no authority to discharge Grayson, and that, in letting him depart, he did, in the language of the act of 1798, u wilfully and negligently ” sutfer him “to escape.”
It is, also, evident that the bank did not prosecute Grayson to insolvency, and that the jailer had become liable to the bank, as for an escape with his unauthorized leave. According to the common law, the jailer was not, it is true, liable for more than the amount of damage which the bank had actually sustained by the escape; and consequently, if it could have been shewn that Gray-son was, in fact, insolvent, the jailer would have been liable for nominal damages only: such would have been his liability even in a suit on his official bond. See Bernard et al. vs. The Commonwealth, (4 Lit. Reports, 152.) But a statute of England, re-enacted by this state in 1798, *184 declares that, if a jailer shall wilfully permit a prisoner, committed to his custody upon an execution, to escape, tbe creditor may, in an action of debt against him, recover the amount of the execution. (1 Dig. 473.)
If the holder of an assigned bbligtttion attempts to pursue the obligor to insolvency, and in the course of the proceeding, an officer so conducts as to render himself liable for the debt, the holder ofthe obligation must avail himself of his rights against the officer, before the assignor will be responsible.
That statute has been invariably construed as subjecting the jailer individually to liability, (in an action of debt,) for the whole amount of the execution, whether the debtor was solvent or insolvent. In this case, therefore, the jailer was liable to the bank for its whole debt, even though Grayson had been actually insolvent.
It is not necessary, at this day, to cite authorities to prove that, unless the bank had, with reasonable diligence, resorted to all tbe ordinary legal means, either direct or collateral, for making its judgment against Gray-son available, it was not entitled to recourse on Johnson. Nor should it now be doubted that, as the bank did not exhaust its legal remedies against Grayson, and the jailer, Johnson was not legally responsible as endorser. This point has been virtually decided more than once, by this court, and has been directly settled by the Supreme Court of the United States, in the case of The Bank of the United States vs. Tyler, (4 Peters, 366.)
The Bank did not prosecute Grayson to insolency. It did not prosecute any one of its legal remedies resulting from the ca. sa. or the escape. This it ought to have done, as endorsee, before it could claim recourse on its endorser.
Wherefore, the judgment of the circuit court must be affirmed.