## SAUNDERS v. UNITED STATES.

(Circuit Court, D. Maine. March 30, 1896.)

### No. 26.

1. OFFICERS OF UNITED STATES—JAILERS OF STATE JAILS.

The jailer of a state jail, in which prisoners, under sentence or awaiting trial by the federal courts, are confined. is not an officer of the United States; and a United States commissioner has no power to call upon him to perform any service.

2. UNITED STATES MARSHALS—FEES—SERVICE OF MANDATE ON POOR CONVICT.

A United States marshal is entitled to a fee of two dollars for the service of a mandate to bring in a poor convict for examination, upon his application for release, pursuant to Rev. St. §§ 1042, 5296.

3. SAME—REMOVAL OF PRISONERS.

A warrant for the removal of a prisoner, confined in a jail remote from the place of trial, but within the district, to the place of trial, is unauthorized; and such a warrant must be regarded simply as an order of court, under Rev. St. § 1030, for the service of which the marshal is not entitled to any fee.

4. SAME—WARRANT OF PARDON.

A marshal is entitled to a fee of two dollars for the service of a warrant of pardon, pursuant to directions of the department of justice.

5. SAME—MITTIMUS.

A mittimus for the commitment of a prisoner is a warrant, for the service of which on such prisoner the marshal is entitled, under Rev. St. § 829, to a fee of two dollars.

6. SAME—DISTRIBUTING VENIRES.

A marshal is entitled to fees, limited, however, by the statute, to $50 for any one term, for distributing venires and paying constables. Harmon v. U. S., 43 Fed. 560, followed.

7. SAME—DISCHARGE OF POOR CONVICTS.

A marshal is not entitled to any fee for the discharge of a poor convict, after examination pursuant to Rev. St. § 1042.

8. SAME—EXPENSES.

It is not a sufficient objection to the allowance to a marshal of expenses, incurred while endeavoring to make an arrest, that the warrant was issued and served at the place where the court is located.

9. SAME—TRANSPORTATION—NEAREST OFFICER.

Under the act of March 3, 1893 (27 Stat. 609), as well as under that of August 18, 1894 (28 Stat. 416), it was the duty of the marshal or other officer arresting a prisoner to take him before the nearest commissioner or other judicial officer, for examination; and the marshal was not entitled to charge for the transportation of a prisoner, for examination by the commissioner who issued the warrant for his arrest, when another commissioner was nearer to the place of arrest.

10. SAME.

The statutory allowance to a marshal for transporting prisoners is intended to cover the cost of actual transportation, and cannot be charged where the marshal and the prisoner walked from the jail to the place of hearing.

11. SAME—ATTENDANCE OF OFFICERS.

The determination of the number of officers whose attendance is necessary, at a hearing of parties accused before a commissioner, is a matter for such commissioner; and the marshal is entitled to charge for the attendance of as many officers as are so found necessary. Harmon v. U. S., 43 Fed. 560, followed.

12. SAME.

The marshal is entitled to charge for attendance at an examination of a poor convict before a commissioner. Harmon v. U. S., 43 Fed. 560, followed.

13. SAME—TRAVEL—RETURN HOME DURING TERM.

A marshal is entitled to charge for travel from his home to attend court, as often, during the term, as the court is adjourned over one or more intervening days, except where such adjournment is from Saturday to Monday. Harmon v. U. S., 43 Fed. 560, and U. S. v. Shields, 14 Sup. Ct. 735, 153 U. S. 88, followed.

14. SAME—SEVERAL WRITS.

A marshal may charge for travel upon two or more writs against different persons, served at the same place and time. Harmon v. U. S., 43 Fed. 560, followed.

15. SAME—EXPENSES—ELECTION.

A marshal cannot, where he holds, at the same time, warrants against different persons, which are served at the same place, charge for his actual expenses upon one of such warrants, and for travel upon the other or others, but must elect between his actual expenses and his statutory charges for travel.

16. SAME—SEVERAL PARTIES.

Nor can a marshal, where he holds one warrant against two or more persons, served at different places, charge for travel in going to serve it upon one, and his actual expenses for the additional distance to serve it on the other or others.

17. SAME—NO SERVICE.

A marshal cannot be allowed charges for travel to arrest when no service is made.

18. SAME—POOR CONVICTS.

A marshal is entitled to charge for travel to serve mandates to bring in poor convicts.

19. SAME—PARDON.

Or to serve a warrant of pardon.

20. SAME—ACCOUNTS—WRONG—FISCAL YEAR.

The fact that a marshal, in making up his accounts, has entered charges for services in the wrong fiscal year, is not a sufficient reason for disallowing such charges.

Geo. E. Bird, for petitioner.
Albert W. Bradbury, U. S. Atty.

WEBB, District Judge. In this proceeding the petitioner seeks to recover the amount of certain fees charged by him for official services as marshal of this district, which were included in his regular accounts, and disallowed by the comptroller. The accounts were all in due order presented to and approved by the court. Proof of required notice and service of the petition has been made. The United States, by the district attorney, demurs to the petition, and the demurrer has been joined. It only falls on the court to pass upon the legality of the charges for services, the performance of which the demurrer admits. The total demanded in the petition is the sum of $1,653, distributed over more than four years.

The items are numerous, but may be conveniently classified under a few heads:

Class 1. Service of warrants and other writs in criminal cases. In this class are included:

(a) Service of warrants for the arrest of persons charged with crimes, 14 items, amounting to $28.

The petitioner abandons his claim for these, as it is found that the same service had been charged and paid for in other accounts.

(b) Service of 67 mandates to bring in poor convicts for examina-

tion, upon their application for release from imprisonment, at $2 each,—$134.

The objection is that this service should have been performed by the jailer. But the jailer is not an officer of the United States, and the commissioner has no power to call upon him to perform any service. The United States uses the jails of the state for the confinement of prisoners under sentence or awaiting trial. The Revised Statutes of the United States (section 5539) subject prisoners so confined to the same discipline and treatment as convicts sentenced under the laws of the state, and place them under the control of the officer having charge of the jail under the laws of the state. Rev. St. §§ 1042, 5296, regulate the method of the discharge of poor convicts. Upon application to a commissioner, in writing, by the convict, and after notice to the district attorney of the United States, who may appear, offer evidence, and be heard, the commissioner shall proceed to hear and determine the matter. To discharge this duty, the commissioner properly issues his mandate that the prisoner, without whose presence he cannot perform the duty of hearing and determining the matter, be brought before him. These proceedings, in Harmon v. U. S., 43 Fed. 560, affirmed by the supreme court in 147 U. S. 268, 13 Sup. Ct. 327, are held to be proceedings in a criminal case; and the marshal is the proper officer to execute all precepts issued therein. The fees for services of this class should be allowed to the full amount of $134.

(c) Service of warrants for removal of prisoners confined in jails remote from the place of trial, to the jail in the city where the trial was to be had; seven prisoners, at $2,—$14.

Rev. St. § 1030, provides that no writ is necessary to bring into court any prisoner or person in custody, but the same shall be done on the order of the court or district attorney. This statute is broad enough in its terms to cover cases like these where the removal was for long distances, but within the same district, though it may be doubted if such cases were in contemplation when the statute was enacted. Probably the primary object was to cut off charges for warrants when the jail was near the courthouse. But, however that may have been, the statute must be construed as it stands; and I must hold that these warrants for removal, as warrants of court, were unauthorized, and must be dealt with simply as orders of the court, for which the charge of $14 cannot be allowed.

(d) Service of a warrant of pardon,—$2.

Satisfactory evidence has been produced that this service was made by the express direction of the department of justice, instructing also that the marshal should report to the department. It was essential that the warrant of pardon, granted by the President, should be delivered, and should be accepted by the convict. U. S. v. Wilson, 7 Pet. 150. The charge is the same as that allowed by the fee bill for the service of other warrants, and the marshal should be paid therefor.

(e) Service of warrant of commitment of four prisoners,—$8.

In U. S. v. Tanner, 147 U. S. 661, 13 Sup. Ct. 436, it was held that a warrant of commitment was not served on a prison keeper, within

the meaning of that clause of Rev. St. § 829, which allows the marshal "for travel, in going only, to serve any process, warrant," etc. That case does not decide the question here presented; at most, it raises a query. "If a warrant of commitment can be said to be served at all upon any person, it is upon the criminal himself, rather than upon the jailer," is the suggestion of the court.

Rev. St. § 829, gives the marshal fees:

"For service of any warrant, attachment, summons, capias, or other writs except execution, venire, or a summons or subpœna for a witness, two dollars for each person on whom service is made."

Is a "mittimus," in legal terminology, strictly and properly a "warrant"? If so, the rightfulness of the marshal's charge is clear, under the statute. The ordinary employment of the term "mittimus" is merely a matter of brevity.

Hawk. P. C. bk. 2, c. 16, § 3:

"And inasmuch as the statute of 31 Car. II., commonly called the 'Habeas Corpus Act,' seems to suppose that all persons who are committed to prison are there detained by virtue of some warrant in writing, which seems to be intended of a commitment by some magistrate; and the constant tenor of late books, practice, and opinions are agreeable thereto."

In St. 31 Car. II. we find these expressions:

"Unless the commitment were for treason or felony, plainly and especially expressed in the warrant of commitment;" "unless for treason or felony plainly expressed in the warrant of commitment;" "upon view of the copy of a warrant of commitment or detainer."

The mittimus must be in writing, under the hand and seal of the magistrate issuing it, showing his authority. It must be properly directed, and must set forth the crime alleged against the party with convenient certainty, and ought to have a lawful conclusion. Hawk. P. C. bk. 2, c. 16, §§ 13–16, 18.

In Hale, P. C., the mittimus is constantly styled the "warrant."

Volume 1, p. 122, after specifying what a mittimus should regularly contain, adds:

"Yet I am far from thinking the warrant void that hath not all these circumstances."

Page 123: "And therefore the justification in false imprisonment against the gaoler may be good by virtue of such a warrant;" "and it seems to me (contrary to the opinion of my Lord Coke) that, if an escape be suffered willingly by the gaoler upon such a general warrant, it will be felony in him;" "and, therefore, if the conclusion of the mittimus be to detain him until further order of the justice, it is true it is an unapt conclusion) * * * but the commitment is notwithstanding good, if there be any tolerable certainty in the body of the warrant for what it is."

Volume 2, p. 583: "And this leads me to the mittimus or the warrant to the gaoler to receive him." "But, if the conclusion be irregular, I think it makes not the warrant void."

Page 584: "If the matter of the mittimus be otherwise sufficient to charge him in custody, it is a lawful warrant."

"Upon the whole, if the offense be not bailable, or the party cannot find bail, he is to be committed to the county gaol by the mittimus of the justice, or *warrant* under his hand and seal containing the cause of his commitment." 4 Bl. Comm. 303.

"Then such justice shall, by his *warrant*, commit him to the common jail," etc. 1 Archb. Cr. Prac. & Pl. 165. At page 167: "The

following is the form of the *warrant* of commitment." And the form given is in all essentials like those issued by the circuit court and commissioners.

U. S. v. Johns, 4 Dall. 413, Fed. Cas. No. 15,481: "By the Court. Upon habeas corpus, we are only to inquire whether the *warrant* of commitment states a sufficient probable cause to believe that the person charged has committed the offense stated."

"Though there should be no doubt as to the validity of the *warrant* of commitment;" "notwithstanding the *warrant* of commitment be defective." Gross, J., in King v. Marks, 3 East, 164.

"Though the *warrant* of commitment be informal." Le Blanc, J., 3 East, 166.

These examples show plainly that, in legal sense, a mittimus is a warrant. If the word in the statute is to be taken in its ordinary and popular sense, no difference appears. In the International Dictionary "mittimus" is defined: "A precept or warrant granted by a justice for committing to prison a party charged with crime; a warrant of commitment to prison." Webster's Unabridged Dictionary, edited by Goodrich & Porter, defines it in the same terms. Worcester's definition is: "A warrant by which a justice of the peace commits an offender to prison."

It follows that the charge was justifiable, and should not have been rejected. Upon what theory the treasury officers acted it is not easy to understand. Presumably not on the authority of Tanner's Case, as, of the original charge for five services, four were disallowed, and one allowed, with travel one mile; nor with regard to the statute, for that provides "two dollars for each person on whom service is made."

Class 2. Fees of marshal for distributing venires, and paying constables, at 15 terms of court; amount disallowed, $256.

The propriety of this class of charges is sustained by Harmon's Case. But the statute provides that they shall not exceed at any court $50. At the December term, 1893, of the district court, the total charged is $60. The excess of $10 must be denied the marshal, and the balance, of $246, be held due to him.

Class 3. One charge, of $1.50, for expenses while endeavoring to arrest.

The objection is that the warrant was issued and served at Bangor, and it seems to have been assumed that in such case there could not have been any expense in endeavoring to arrest,—an assumption that disregards the time frequently consumed in seeking and finding a person accused of crime, even in the town of his residence. But, in addition to the admission of the demurrer, I have the testimony of the marshal that these expenses were actually and necessarily incurred. They are allowed.

Class 4. Discharge of poor convicts after examination by commissioners; 66 discharges, at 50 cents,—$33.

The petitioner argues that these fees are given to him by the clause of section 829, Rev. St., which allows, "for every commitment or discharge of a prisoner, fifty cents." The regulation of fees by

statute was first provided for by the act of February 26, 1853, and, without question, related to such services as were then required of officers according to the practice up to that date. The marshal was under the duty of committing prisoners either to await trial or in execution of sentence. When the term of confinement expired, because there was no indictment found, or when a prosecution was ended by the entry of a nolle prosequi, or by acquittal, the prisoners were, by order of court, discharged, and the marshal was the agent of the court in executing such order. For these services the fee of 50 cents was granted. It was not until June 1, 1872, that congress made an enactment for the relief of poor convicts retained in jail solely for inability to pay a fine or fine and costs. Prior to that date, the only way by which such convicts could be released from their imprisonment was by executive pardon. The act of June 1, 1872, now found in Rev. St. § 1042, directs the course to be pursued. If, upon examination, the commissioner is satisfied of certain facts, he is to administer to the convict a prescribed oath; "and," is the statute, "thereupon such convict shall be discharged, the commissioner giving to the jailer or keeper of the jail a certificate setting forth the facts." In this matter of discharge, no duty seems to rest on the marshal. The commissioner gives the certificate directly to the jailer or keeper of the jail, setting forth the facts, of which one is the discharge, the result of examination. I am inclined to think that the taking of the oath by the convict ipso facto operates as a discharge, and that, for further detention, he might have his action. But, however that may be, I cannot find in those proceedings any authority for allowing the marshal discharge fees, and therefore decide against the petitioner as to these charges, amounting to $33.

Class 5. Transportation of prisoners.

(a) At the date of filing this petition, it contained three items of this class. But later, upon the marshal's explanation, two of them have been allowed and paid in full. There is left only one charge, of $12.80, for transporting one George W. Williams, from Augusta to Portland, a distance of 64 miles.

The actual transportation on June 2, 1893, is proved. The computation is correct. The United States contends that, inasmuch as a commissioner of the circuit court was at that time resident at Augusta, it was the duty of the officer to take his prisoner before such commissioner for examination; and that failing to do so, and, instead, taking him to Portland, before the commissioner who issued the warrant, he cannot be allowed for transportation. This contention is based upon the following terms of the act of March 3, 1893 (27 Stat. 609):

"It shall be the duty of the marshal, his deputy, or other officer who may arrest a person charged with any crime or offence, to take the defendant before the commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment or taking bail for trial, and the officer or magistrate issuing the warrant shall attach thereto a certified copy of the complaint, and upon the arrest of the accused, the return of the warrant, with a copy of the complaint attached, shall confer jurisdiction upon such officer as fully as if the complaint had originally been made before him; and no mileage shall be allowed any officer violating the provisions hereof."

By Act Aug. 18, 1894 (28 Stat. 416), it is made the duty of the officer making the arrest "to take the defendant before the nearest circuit court commissioner or the nearest judicial officer having jurisdiction under existing laws,"—for the rest of the sentence following the terms of the act of 1893 on this subject.

In this case the complaint was received and the warrant issued by a commissioner at Portland, and the prisoner was taken before him for examination. On the part of the petitioner it is argued that the act of 1893 cannot properly be construed to mean the commissioner who is nearest the place of arrest; that the qualification of nearness is confined to other judicial officers; that the words "the commissioner" are, by the arrangement of the language and the form of the sentence, to be taken independently of the provision as to other judicial officers, and must be interpreted as referring only to the commissioner who issued the warrant. And, in confirmation of this argument, the change made in the statute by the act of 1894 is referred to. It is contended that, by this change, congress has interpreted the pre-existing statute, and furnished the construction to be adopted by the court.

It is the province of the courts to construe the statutes enacted by the legislative branch of the government. A congressional interpretation of an existing statute will control the courts in the future, since it must be regarded as new legislation, but it is of no weight in deciding the construction as to accrued rights or liabilities. So, if it be admitted that, by this change in phraseology, congress expressed the opinion that the act of 1893 was to be construed as the petitioner contends, it would not thence follow that the court is bound to adopt that construction. But it is more probable that the later legislation was designed to remove all possible ambiguity in the earlier. If there were any such ambiguity in the particular question now before the court, it could appear only upon very nice criticism of the language for the purpose of escaping its obvious import. Following the general rule for the construction of statutes, that the intention of the legislature is to be resorted to where the language is ambiguous, it does not admit of doubt that the true meaning of the act of 1893 is the same as that of the act of 1894. I must therefore hold that the disallowance of this item of $12.80 was right.

(b) Sixty-three charges for transporting prisoner from jail to appear before the commissioner for examination as a poor convict; in each case one mile,—in all $12.60.

While the statute allows the marshal, for transporting criminals, 10 cents a mile for himself and for each prisoner, it is manifest that the fee is given only in case of actual transporting, and is intended to cover its expenses. When, as in these cases, the officer and the convict walked, there was no transportation, within the meaning of the statute, and the marshal's charges were not justified.

Class 6. Attendance of marshal and deputies, before commissioners, at examination of parties accused.

(a) The marshal's account contained charges in two cases for the attendance of himself and one deputy, amounting to $8.

The attendance of one officer only in each case was allowed, on the assumption that the attendance of more was unnecessary, and there was suspended $4, which has not since been allowed and paid. Harmon's Case establishes that the determination of the number necessary is a matter for the commissioner. The suspension of this charge of $4 was incorrect.

(b) Attendance of marshal before commissioner on 25 separate days, at examination of poor convicts, $50; and attendance of one deputy on 27 days, in like cases, $54.

Under the authority of Harmon's Case, the petitioner should be paid these items, amounting to $104.

Class 7. Travel of marshal from his home to attend court; distance, 168 miles.

The law in respect to these charges is plainly laid down in Harmon's Case, thus:

"This allowance is not expressly, or by any reasonable implication, restricted to a single travel at each term, but extends to every time when he may be expected to travel from his home to attend a term of court. If the court sits for any number of days in succession, he should continue in attendance, and is entitled to only one travel. But, if the court is adjourned over one or more intervening days, he is not obliged to remain at his own expense at the place of holding court, but may return to his home, and charge travel for going anew to attend the term at the day to which it is adjourned." Harmon v. U. S., 43 Fed. 560-565, affirmed 147 U. S. 268–279, 13 Sup. Ct. 327.

In U. S. v. Shields, 153 U. S. 88–92, 14 Sup. Ct. 735, it is decided that an adjournment from Saturday to Monday cannot be considered as an interruption of the term, or as a suspension of the business of the court, so as to bring the right to charge travel within the rule laid down in Harmon's Case.

Notwithstanding these authoritative expositions of the statute, the accounting officers lay down the rule: "When the adjournment was less than three days, the travel is disallowed." Moreover, they have, in dealing with these claims of the marshal, disregarded all difference between the circuit court and the district court. For example, the circuit court was adjourned from December 17th to January 2d. The marshal was in attendance on the district court December 31st, and, on its adjournment to January 5th, returned to his home, and has charged for travel to the circuit court on the 2d of January. This was disallowed, because there was only one day's adjournment. If the attendance upon the district court had continued to the day to which the circuit stood adjourned, there could have been no actual travel to be charged. But, where the travel was actually performed, it was properly charged. But the charges for travel to the circuit court on July 10, September 25, and October 22, 1893, and those of August 7, October 29, November 5, December 10, December 17, 1893, and of January 8 and 29, February 19, and March 19, 1894,—12 items of $16.80; a total of $201.60,—must be rejected, as they were all cases where the adjournment was from Saturday to Monday.

Class 8. Travel in going only to serve precepts, warrants, etc. Under this class are included:

(a) Charges for travel on two or more writs against different persons, served at the same place and time.

These charges were properly made. The marshal was authorized to make them, and should be paid. Harmon v. U. S., 43 Fed. 560–566.

(b) Charges for travel upon one warrant when, upon another in his hands, against a different person, at the same time and served at the same place, charges for actual expenses were made, and have been allowed and paid; also, charges where, having one warrant against two or more persons, travel was charged going to serve upon one, and actual expenses for the additional distance to serve on the other or others.

The petitioner contends that part of these charges are permitted by the last clause of section 829 of the Revised Statutes:

"In all cases where mileage is allowed to the marshal, he may elect to receive the same or his actual traveling expenses, to be proved on his oath, to the satisfaction of the court."

He maintains that the words "in all cases" are equivalent to "upon any process, warrant, attachment, or writ"; and that as he is allowed mileage on several writs in his hand at the same time, and served on different persons at the same place, he can, at his election, charge actual expenses on one and full mileage upon the other. As to the other part, where more than one person was served with the same process, he justifies it under that portion of section 829 which gives him travel in going to serve on the most remote person to be served, adding thereto the extra travel which is necessary to serve it on the others. In this case, he contends, it is optional with him to charge his actual expenses, instead of such extra mileages.

The argument is specious and unsound. The choice given is between mileage and expense of the trip, and was unquestionably given as a matter of consideration to the officer, and to protect him from pecuniary loss in the performance of his duty. While the allowance of mileage may be regarded as designed to reimburse him for his expenses, it is practically to some degree compensation for time and labor. When the mileage allowable will not cover the expense of the trip, the officer is protected by this privilege of waiving the mileage, and collecting what he has been compelled to pay out. If the mileage exceed his expense, he is not required to account for the surplus. All the mileage he might charge for going the trip must be waived if he elects to take his expenses. The impropriety of a different course is seen if the writs he was to serve were in suits commenced by different private persons. Both could not be made to pay the actual expenses of the marshal; yet, if his construction of the statute is right, that would result. Each suit is a case. Upon each writ served on different persons at the same place he would be justified in demanding full travel, and in each case might, at his pleasure, charge actual expenses instead. Or, if he makes the election of expenses on one writ only, upon which should the expense fall? It is certain, expenses will not be claimed when they are less than the mileage amounts to. Therefore one plaintiff would be subjected to unequal and excessive charge for the same service. When the question of claiming mileage for one part, and expenses on the other part, of the same service, is examined, it

is still weaker. The action of the accounting officers in rejecting items of the kinds described was correct. They amount to $50.10.

(c) Charges for travel to arrest when no service was made.

The statute gives "travel, in going only, to be computed from the place where the process is returned to the place of service, or when more than one person is served therewith, to the place of service which is most remote." The implication is obvious that, before any travel can be charged, service must be made. Without service there can be no computation of travel. It would be measuring distance with only a single point,—that of termination, and no point of beginning. These charges, amounting to $204.42, cannot be sustained.

(d) Travel to serve mandates to bring in poor convicts.

These are proper charges, for travel, in going only, to make the service, and should be paid, $17.28.

(e) Travel to serve warrant of pardon.

The warrant was sent from the department of justice to the marshal, with instructions to serve it, and make report to the department. It is familiar law that a pardon is inoperative till delivered and accepted. The travel was necessary under the order of the department, and is properly charged at $3.60; but, probably by inadvertence in the statement of differences, only $3.30 was actually withheld from the marshal, and for so much he still has a just claim.

Class 9. Sundry charges of actual expenses of traveling in service of process, warrants, etc.,—in all $57.70.

Of this total, $24.85 was for expenses in cases where no arrest was made; but the officer was allowed, and has received, the statute allowance for expenses while endeavoring to arrest. The excess of $24.85 cannot be allowed. The sum of $32.85, included in the above total of $57.70, is for charges of expense when on the same trip, but upon other warrants mileage was charged and paid. What has been said in regard to the marshal's right to have both mileage and expenses on the same trip, although it was to serve more than one warrant and on different persons, applies to these charges. They must be rejected.

Class 10. Fees for services in sundry civil cases, wherein the United States were plaintiffs,—$90.52.

The only objection made to these charges was that, in making his accounts, the marshal had entered them in the wrong fiscal year. Such an error does not deprive him of his right to compensation, and in this proceeding the regulation as to years does not influence. It may, however, be well to say that transferring the charges to the proper fiscal year would not in any year swell the marshal's emolument above his lawful maximum. These items are allowed.

Class 11. The only other charge is for expense for light, cleaning courthouse and lockup at Bath, at the September term, 1890, of the district court, charged among miscellaneous expenses.

The charge was for $6.50, and was properly vouched; but, upon the mistaken theory that it was charged against appropriation for "pay of bailiffs," etc., and was carried into the abstract as $8, the sum of $8 was withheld from the marshal. A term of the district court is, by the statute, assigned to be holden at Bath on the first

Tuesday of September of each year. The United States have no courthouse there, and the county has no jail. The county has always allowed to the United States the use of its courthouse, without any other charge than the actual cost of lights and the expense of cleaning after the court ends. On the same terms, the city of Bath extends to the United States the use of its city lockup for the detention of prisoners during the session of the court. This charge was for such expenses, and amounted to $6.50. The voucher was in the name of John W. Ballou, who attended to having the cleaning done, and settling with the gas company for light. Mr. Ballou is the sheriff of the county. In the same quarter's accounts of the marshal was a charge of Mr. Ballou as bailiff, attending the court, which amounted to $8. Evidently, the accounting officers did not understand the facts, and concluded that these were double charges for the same thing, and charged also in one case to the wrong appropriation. They accordingly disallowed and refused payment of $8. It was an unjustifiable disallowance, and the marshal should be paid the amount.

The result is that various claims specified in the petition, and amounting to $627.52, are improper charges, and are rejected; and the balance, of $1,025.48, was rightly charged. The demurrer is overruled. Judgment for the petitioner for $1,025.48, and costs, according to the statute.

Note. To avoid delay and expense of a threatened appeal, on that point, the petitioner has remitted the sum of $8 allowed for the service of warrants of commitment—as the same question is involved in another petition by him.