## Holland, Jailer, v. Fayette County et al.

(Decided June 19, 1931.)

38

S. MONROE NICKELL and A. FLOYD BYRD for appellant.

GEORGE W. VAUGHN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

This is an appeal from a judgment regarding the salary of the jailer of Fayette County. On April 3, 1929, the Fayette fiscal court entered an order requiring the jailer of Fayette County to make a report of his receipts and disbursements. Instead of doing so, the jailer began this action on April 15, 1929, under the Declaratory Judgment Act asking the circuit court to define his rights and those of the fiscal court.

The jailer receives fees for various services and a correct understanding of these and their nature will assist in the solution of our problem.

"Fees collected by officer represent the charge which the state makes for services rendered by it through its officers, and constitute a fund subject to the control of the state and to be applied as the Legislature directs. . . .

"The state may give all the fees to the officer as his compensation, or it may give him a portion only, and retain the remainder to be applied to such

purposes as the Legislature may determine." State v. Spencer, 81 Fla. 211, 87 So. 634.

Thus whatever money comes to the hands of the jailer as jailer, from any source, he receives for the state. Out of it he may pay, first, the expense of conducting his office allowed by law, he may then retain $5,000 for his salary, and he must account for the remainder. This is made so by section 246 of the Kentucky Constitution, which is self-executing. See Shipp v. Rodes, 196 Ky. 523, 245 S. W. 157; Com. v. Nunnelley, 211 Ky. 409, 277 S. W. 506; Carroll v. Fulterton, 215 Ky. 558, 286 S. W. 847; 15 C. J. p. 513, sec. 184.

By section 106 of the Constitution it is provided that the fees of county officers shall be regulated by law, but for 40 years the Legislature has omitted to make such regulation, so that the only regulation we have is that contained in section 246 of the Constitution. In printing copy of the Constitution in the Statutes, this section 106 has been since 1894 unfortunately and improperly preceded by the heading, "Fees; in counties with seventy-five thousand population." A proper heading would be "Salaries of county officers." The use of this misleading heading may account for the failure of the Legislature to act, but this heading is the work of the editor; it is not part of the Constitution. The Legislature should provide for the fixing of the compensation of county officers.

These parties have agreed on the following stipulation:

"It is agreed and stipulated by the parties to this action that the court shall hear and pass upon the following legal propositions for the purpose of determining what the rights of the parties hereto are, and that when the court has determined what their rights are and what the law is with reference thereto, then said rights may be subsequently enforced in this or another action by any or all said parties hereto.

"The questions raised by this action and to be heard and passed upon by the court are:—

"1. Is the plaintiff required to file any report of his receipts and expenditures with the fiscal court of Fayette County or other office or officer, and if so what shall he report in the nature of receipts and disbursements or expenditures?

"2. Is the plaintiff or Fayette County required to furnish and pay for heat, light, water, telephones and sanitary supplies used by the jailer in connection with the jail and jailer's residence? .

"3. Is the plaintiff or Fayette County required to furnish and pay for the beds and bedding used in connection with the jail and jailer's residence, and to what prisoners shall the same apply in so far as it applies to the beds and bedding used in the jail?

"4. Is the jailer limited to the sum of $5,000.00 as total compensation for his services, after deducting all expenses from total receipts of his office and if so, are receipts from keeping and dieting Federal prisoners to be included in calculating his total receipts along with his expenditures?

"It is further stipulated and agreed that in the event either party to this litigation shall appeal this case to the court of appeals of Kentucky, then all matters herein involved so far as the enforcement of said judgment of this court is concerned shall await the final determination of the court of appeals with reference thereto, provided of course that the case is appealed within sixty days from the date of the rendition of the judgment of this court in this case.

"It is further stipulated that the plaintiff need not file any reply to the answer and amended answer and counter-claim filed by the defendants herein until after the court has determined the rights of the parties herein with reference to the matters involved in this action, and shall have determined the things for which the plaintiff shall account, if anything."

Answer to Question 1. The jailer must make a report to the fiscal court including therein all moneys coming to him by virtue of his office from all sources, and of course he will want to put in all of his allowable expenditures. See section 1840, Ky. Stats., and section 246, Ky. Constitution.

Answer to Question 2. The jailer must procure these matters for the jail, and he is entitled to credit therefor in his settlement. The county is in no wise responsible for these things in the jailer's residence. Section 3948 does not apply to Fayette County, as it contains a city of second class, and has a circuit court of continuous session.

Answer to Question 3. The county shall buy the necessary beds and bedding in the jail for all classes of prisoners. The county is in no wise responsible for the beds in the jailer's residence. See section 2236, Ky. Statutes.

Answer to Question 4. Yes, the jailer's compensation is limited to $5,000. He may deduct this and all his legitimate expenses from the total receipts of his office. He must report all receipts from every source.

The real question in this case is the one just answered. Does this include receipts from the federal government for keeping federal prisoners? Of course it does. By section 2227, Ky. Stats., the jailer must receive and keep Federal prisoners.

The first Congress of the United States, by resolution of September 23, 1789, asked permission to use the prisons of the several states. That permission was generally granted. Jailers are required to receive and keep these prisoners upon the same terms as state prisoners. See In re Kays, Sheriff (D. C.) 35 F. 288. A jailer of Kentucky is bound to receive persons committed by authority of United States and keep them until discharged in due course by the laws of the United States. Johnson v. Lewis, 31 Ky. (1 Dana) 182. Such a jailer receiving such a prisoner is not an officer of the United States. Saunders v. U. S. (C. C.) 73 F. 782.

The money received by such a jailer, where the jailer is on a salary, and the effect of section 246 of the Kentucky Constitution is to put Kentucky jailers on a salary not exceeding $5,000, belongs not to the jailer but to the county in whose jail the prisoner is kept. Los Angeles County v. Cline, 185 Cal. 299, 197 P. 67; Avery v. Pima County, 7 Ariz. 26, 60 P. 702; Board of Freeholders v. Kaiser, 75 N. J. Law, 9, 69 A. 25; Adams, Sheriff, v. Maricopa County, 16 Ariz. 418, 145 P. 884; King County v. Stringer et al., 130 Wash. 287, 227 P. 17; Binford, Sheriff. v. Harris County Secretary (Tex. Civ. App.) 261 S. W. 535. Orndorff, Sheriff, et al. v. El Paso County et al. (Tex. Civ. App.), 295 S. W. 219. The United States Supreme Court denied a writ of certiorari in this case. See 276 U. S. 633, 48 S. Ct. 339, 72 L. Ed. 742.

There are but two cases to the contrary. The first is Majors v. Lewis and Clark County, 60 Mont. 608, 201 P. 268, where the court decided this question against the

county and gave as its authority for so doing In re Kays (D. C.) 35 F. 288, and Avery v. Pima County, 7 Ariz. 26, 60 P. 702. The question in the Kays Case is thus stated in the opinion:

"One Gallagher having, for an offense against the laws of the United States, been duly committed to the custody and keeping of the sheriff of Los Angeles county,—the officer in charge of the jail of the county,—that officer refused to receive him into his custody unless the government of the United States would pay for the support of the prisoner at the rate of 75 cents per day. The rate fixed by the board of supervisors of the county to be allowed the sheriff for the keeping of prisoners charged with or convicted of offenses against the laws of the state is 35 cents per day, and the agreed case shows that for the keeping of Gallagher the sheriff was, on behalf of the United States government, duly tendered a like sum."

The court cites sections 1601 and 1602 of California Penal Code, and then adds: "It is thus made the duty of the sheriff to receive, and keep in the county jail, until legally discharged, any prisoner committed thereto by process or order issued under the authority of the United States, as if he had been committed under process issued under the authority of the state."

So there is no support in the Kays Case for the Montana opinion in Majors v. Lewis and Clark County. In Avery v. Pima County, an action had been brought by a taxpayer for use and benefit of Pima County v. The Sheriff and the Board of Supervisors to recover of them these three items, which they allege had been allowed to the sheriff without authority of law:

July 3rd, 1894. J. B. Scott, care U. S. prisoners. For services in caring for U. S. prisoners during the fourth quarter of 1893..... $168.35

Oct. 1st, 1894. To care of thirty-seven U. S. Prisoners during the second quarter of A. D. 1894 (eight hundred and sixty days' care, at 35 cents per day) ............................................. $301.00

Dec. 24th, 1894. To care of U. S. prisoners during the third quarter of 1894 ................... $254.00

The county recovered, the defendants appealed, and the judgment was affirmed. Thus we see that case, instead of supporting the Majors v. Lewis and Clark County Case, is directly opposed to the conclusion there reached, so we are forced to conclude the opinion in Majors v. Lewis and Clark County is unsound. The Texas court refused to follow it in the Binford Case, supra.

The other opinion to the contrary is that of Bay County v. Marvin et al., 247 Mich. 529, 226 N. W. 247, in which opinion the Michigan court quotes from the opinion in Majors v. Lewis and Clark County, including its cited authorities, which perhaps the Michigan court did not carefully consider, else it would have discovered, that these authorities did not support the Montana opinion. After consideration of these two opinions, we have decided to disregard them and follow the majority.

A similar question arose relative to the naturalization fees, charged and collected by state courts under a federal statute, which allowed the clerk of the state court to retain one-half of them and required these clerks to remit the other half to the proper United States authorities. There are many of these so-called naturalization fee cases involving a contest between the state court clerk and the county treasurer of the county where the state court is situated. The most famous of these is the Mulcrevy Case. See City and County of San Francisco v. Mulcrevy, 15 Cal. App. 11, 113 P. 339, 341, where the court said:

> "It was by reason of his election as county clerk and his taking office and giving his bond, and receiving a salary of $4,000 per annum, that he was enabled to receive the fees for naturalization proceedings in the superior court. He received them in his official capacity. He was ex-officio clerk of the superior court in which the fees were collected under the provisions of the act of Congress. . . . Such fees were not his, but belonged to the city and county, he being in one sense the agent of the city and county in collecting such fees."

Mulcrevy felt aggrieved by this decision, and carried his case to the United States Supreme Court, where it was affirmed. See 231 U. S. 669, 34 S. Ct. 260, 58 L. Ed. 425. For similar cases see Berkshire County v. Cande,

222 Mass. 87, 109 N. E. 838; Barron County v. Beckwith, 142 Wis. 519, 124 N. W. 1030, 30 L. R. A. (N. S.) 810, 135 Am. St. Rep. 1079.

The jailer received these prisoners and got these fees for keeping them because he was jailer; he got them, not in his individual capacity, but in his official capacity. He must include them in his accounting.

Another question presented by this record is what is the unit for accounting. Is a year the unit, or is the jailer's four-year term the unit? Until the Legislature undertakes to regulate the fees of county officers, as it is required to do by section 106 of the Constitution, we shall deal with all officers as we have dealt with the commonwealth's attorneys, and shall treat the year as the unit. See Gilliam v. Greene, 185 Ky. 238, 214 S. W. 889.

This excess is claimed by both the county and the state, and a very persuasive brief has been filed on behalf of the state. The county is but an arm of the state government; it is merely a subdivision of the state formed for administrative convenience; it is required by the state to erect and maintain a jail. It has no choice in the matter. It must have a jail, and must keep all prisoners therein, and, until the Legislature makes provision for the fixing of salaries of county officers as contemplated by section 106 of the Constitution, we shall follow and adhere to our ruling in Shipp v. Rodes et al., 196 Ky. 523, 245 S. W. 157, and hence we hold the county is entitled to this excess.

The state once claimed such excess under section 53, art. 18, chap. 226, of Acts of 1981-92-93 (sec. 1776, Ky. Stats., 1894 Ed.), but by chapter 31 of Acts of 1898, this section 53 was repealed.

In Denham v. Com., 119 Ky. 508, 84 S. W. 538, we held the words "State Prison" did not mean the "County Jail."

Upon cross-appeal this question is raised:

"Can the county of Fayette or its fiscal court recover of the jailer money paid by it for water, and light during the years of his administration and paid to him by mistake?"

This question is not embraced within the stipulations filed, which is probably the reason it was not passed on

by the trial court and is the reason we shall not pass upon it.

The conclusions we have reached are the same as those reached by the Fayette circuit court, except in some minor particulars, to which extent that judgment will be modified to conform to this opinion, and, as so modified, it is affirmed.

The whole court sitting.

### JUDGE DIETZMAN'S DISSENTING OPINION.

I am unable to agree with the majority opinion in its entirety. In my judgment, this case does not present the question whether section 246 of the Constitution is self-executing or not, nor whether the fiscal court of Fayette county can bring suit against Holland for an accounting of his receipts and disbursements as jailer of Fayette county during his term of office. It presents solely the question whether in advance of such suit the fiscal court has a right to compel the jailer to make a settlement with it or to file a statement of his accounts. There was a time when there was specific legislative authority for this. See section 1776 of the Kentucky Statutes, 1894 Edition. In part it read:

> "Each jailer, county clerk, circuit clerk, commissioners, receivers, examiners and sheriff in a county having a population of over forty thousand and under seventy-five thousand shall, in a suitabe book kept in his office, keep and enter therein a true and faithful account of the amounts earned by him or due him for official services from each person, company, corporation, county, State and United States Government, and what part thereof, if any, has been paid, and when paid. . . ."

This section was later repealed by the Legislature. It is not the province of the court to legislate, and, without an act requiring the jailer to file a settlement or an account with the fiscal court, I am unable to see how he can be compelled by a mere order of the fiscal court to do so. The majority opinion seems to think the fiscal court derives this authority from that portion of section 1840 of the Statutes which vests the fiscal court with power, among other things, "to cause correct accounts and records to be kept of all receipts and disbursements of

the public funds of the county, and have the accounts of all county officers audited, when necessary." The money paid by the state, county, city, and federal government to the jailer for keeping and dieting the prisoners is his compensation, which is paid to him for the services he is thus required to render, and are not public funds of the county. The Legislature so thought when it drafted section 1776 of the Statutes, supra, as may be seen from its wording. Plainly the provision in section 1840 was not meant to cover such a situation.

I am further of the opinion that, if the jailer may be required to refund all sums received by him over and above his allowable expenditures and his $5,000 salary, such refund should be distributed between the state and the county in proportion to the funds respectively paid by them to the jailer for the keeping of prisoners by him. The Constitution forbids the General Assembly to levy or impose any tax for the purpose of any county, city, town, or municipal corporation. It further forbids the commonwealth to assume the debt of any county, municipal, corporate, or political subdivision of the state. It forbids the lending of its credit to these local subdivisions, and it further provides that a tax levied and collected for one purpose shall never be devoted to another purpose. If the state be not allowed to keep its proportion of any excess over $5,000 which the jailer receives, it is plainly aiding the county, to which the majority opinion gives the excess by imposing state taxes which go for the benefit of the county. In truth, this is a gift, and is the devotion of taxes raised by the commonwealth for state purposes to the counties. This the Constitution forbids.

I am authorized to state that Judge Willis concurs in these views and this dissent.

Judge Willis further dissents from so much of the majority opinion as holds that the jailer must account for the money received by him from the federal government for keeping and dieting federal prisoners.