Martin R. WILSON, County Attorney for and on Behalf of BELL COUNTY, Kentucky, Appellant,

v.

Harry BALL, Jailer of Bell County, Kentucky, et al., Appellee.

Court of Appeals of Kentucky.

May 1, 1959.

Martin R. Wilson, Pineville, for appellant.

Kelly Clore, James S. Wilson, Pineville, for appellee.

MOREMEN, Judge.

Appellee, Harry Ball, was jailer of Bell County during the years 1950, 1951, 1952, and 1953. On October 5, 1954, he filed with the Bell Fiscal Court a report of his receipts and expenses for those years, and they were accepted and approved. The county attorney appealed from the action of the fiscal court, and, after trial, the circuit court entered judgment which approved, with a few small modifications, the jailer's accounting. On this appeal, the validity of the jailer's expenditures is again challenged. It is conceded that his report of receipts is correct. The validity and propriety of the jailer's expenditures for food, feeding of prisoners, the salaries of cooks, and the wages for one deputy jailer are also conceded.

The controversy arose from the hiring and the paying of wages to turnkeys and matrons for female prisoners, from charges made for transporting prisoners between courts in Middlesboro and the jail at Pineville, and from the fact that credit was given for items which were purchased by the jailer and furnished to the circuit court and grand jury and to the jail.

At the outset we must decide whether an act of the General Assembly (now KRS 64.-480 to 64.760) popularly called the "Salary Act of 1950," is applicable to this case. That Act has been instrumental in clarifying the rather vague existing law on the subject.

Appellee's term as jailer began in January 1950. The Salary Act, which became effective on June 30, 1950, placed in the legislative bodies of various political subdivisions the power and duty to fix the salaries of officials who served that unit, limit the number and amount of salaries of deputies and assistants, and generally to control or define proper expenditures to be made in connection with the operation of the office.

The Act gave to the fiscal court of each county the right to fix the compensation of every county officer and employee, and provided (KRS 64.530(1)):

"* * * In the case of county officers elected by popular vote, the compensation of any such officer, and of his deputies and assistants, during the term of those now in office, * * * shall not be fixed at less than that fixed by the law in force and effect on November 1, 1949. In the case of county officers elected by popular vote, for terms commencing after the effective date of this Act, the annual compensation of the officer and of his deputies and assistants shall be fixed by the fiscal court not later than the first Monday in May in the year in which such officers are elected, and shall not be changed during the term."

It will be noted that while the Act prohibits any action by the fiscal court which would lower the compensation of the officer and his deputies and assistants who were in office when the Act became effective, it does not place a positive duty on the court to fix the compensation of or the number of the deputies or assistants. The Act seemingly grants authority to the fiscal court to deal only with officers who assume office after the effective date of the Act (June 30, 1950). This intent is manifest in Section 32 of the Act (KRS 64.730) which reads:

"Where any public body is required by this Act to fix the compensation of an officer, and of his deputies and assistants, *for terms commencing after the effective date of this Act,* not later than the first Monday in May in the year in which such officers are elected, and the body fails to do so, the compensation of the officer, and of his deputies and assistants, shall be the same as for the preceding term."

Appellant, in his brief, has taken the position that the terms of the Salary Act do not apply to the facts in this case (we agree) and insists that under the law in effect prior to its enactment, and under KRS 71.060 (prior to the 1956 amendment), the jailer was permitted only one deputy. That section read:

"Except as otherwise provided in KRS 71.070 and 71.080, any jailer may, with the approval of the county court, appoint one deputy. The jailer shall be liable on his official bond for the conduct of his deputy. The deputy shall have all the powers and be subject to the same penalties as the jailer. He may be removed at any time by the jailer."

Appellant argues that under the holding in Taylor v. Todd, 241 Ky. 605, 44 S.W.2d 606, a jailer had no authority to appoint or to employ any persons to help him in his duty except the one deputy. That case, while it does not discuss the principles in-

volved to any great extent, is authority for the proposition that a jailer cannot hire a matron and a bookkeeper. It was decided in the year 1931. In the recent case of Funk v. Milliken, Ky., 317 S.W.2d 499, 506, it was recognized that the law formerly was much more stringent in this regard than it is now. We said:

"Approximately 35 years ago, the rule in this state seemed to be that a fee officer must personally bear all expenses of his office (other than for authorized deputies), except those which the fiscal court, by express or necessarily implied statutory authority, could have paid directly out of regular county revenues. In Commonwealth v. Nunnelley, 211 Ky. 409, 277 S.W. 506, decided in 1925, it was held that a sheriff could not be given credit, against excess fees, for automobile expense, stamps, stationery, books, post office box rent, and similar items of expense. However, he was allowed credit for telephone expense, because the statutes required the fiscal court to furnish an office for the sheriff, and the court considered a telephone to be a necessary appurtenance to such office.

"In more recent years, this Court has departed from the stringent limitations of the Nunnelley case, and has adopted the view that credit may be allowed for expenses that are reasonable in amount, beneficial to the public, and not predominantly personal to the officer in the sense that by common understanding and practice they are considered to be personal expenses. See Holland v. Fayette County, 240 Ky. 37, 41 S.W.2d 651; Commonwealth v. Coleman, 245 Ky. 673, 54 S.W.2d 42; Goodlett v. Anderson County, 267 Ky. 166, 101 S.W.2d 421. Support for this view is found in Section 106 of the Kentucky Constitution which recognizes that 'necessary office expenses' are a proper charge against fees."

The Court then discussed matters which were subject to the new Salary Act and said:

"In determining whether an expense is in an allowable category, whether the determination is made in advance or when the officer makes his settlement at the end of each year, the fiscal court will be governed by the consideration of whether the expense is official rather than personal in nature. Any abuse of authority will of course be subject to judicial review."

In Shamburger v. Tierney, 314 Ky. 459, 236 S.W.2d 279, the Court applied the more liberal view which has developed in recent years and, in considering KRS 69.280, which reads, "In counties having a population of 250,000 or more the county attorney shall appoint a first and a second assistant county attorney," in connection with the new Salary Act which permitted the fiscal court to fix the number of deputies and assistants, held that KRS 69.280 was intended to assure the county attorney of Jefferson County at least two assistant county attorneys, and that KRS 64.530 was intended to authorize the fiscal court to grant more than two assistants if it deemed the work of his office required it. In other words, it held this statute was not restrictive, and merely guaranteed him two officers who would have powers commensurate with his. In the light of that decision, we feel that KRS 71.060, as it then existed, should be construed in the same light and treated as guaranteeing a jailer one deputy, but not denying to him the right to employ other help to discharge the proper functions of his office.

In regard to the other expenses, which the fiscal court approved and which are now under attack by appellant, we believe the trial court was correct when he said:

"A jailer's compensation, within the meaning of section 246 of the Constitution is the 'balance of whatever the

jailer retains for his own services' after payment to others for labor and expenses required for the proper performance of the duties and functions of his office. Bell Fiscal Court v. Helton, 258 Ky. 219, 79 S.W.2d [683] 684. An 'allowance of reasonable expenses incurred in the discharge of the official duties of his office is neither salary, compensation nor an emolument of office.' Manning v. Sims, 308 Ky. [587] 597, 231 [213] S.W.2d 577, 5 A.L.R.2d 1134 [1154]."

In the case at bar, the jailer's receipts, expenses allowed by the trial court and the excess amount of receipts over expenses are as follows:

| Year | Receipts | Expenses | Compensation |
|------|----------|----------|--------------|
| 1950 | $ 23,418.60 | $ 19,519.26 | $ 3,899.34 |
| 1951 | 26,400.40 | 21,877.78 | 4,522.62 |
| 1952 | 24,450.20 | 21,062.83 | 3,387.37 |
| 1953 | 21,835.10 | 19,019.77 | 2,815.33 |

■ It will be noted that in no year did the jailer's compensation exceed the maximum allowed by Section 246 of the Constitution. We must bear in mind that the claimed expenses must be necessary for the official's economic administration of the office and that the compensation paid to assistants or the expenses of various items must not be unreasonable or extravagant. Shipp v. Rodes, 196 Ky. 523, 245 S.W. 157. But appellant has failed to point out in his brief where it is believed that the jailer was extravagant in his help or expenses and we find nothing which indicates that either the fiscal court or the trial court was in error in allowing them.

■ Appellant relies upon the case of City of Fulton v. Shanklin, 275 Ky. 772, 122 S.W.2d 733, to support his contention that appellee was not entitled to credit for expenses in transporting prisoners. This expense resulted from the transportation of county and state prisoners between the county jail at Pineville and the court at Middlesboro in the same county, Bell County being one of the counties in which the circuit court was permitted, under the statutes, to sit at a place other than the county seat. In this connection, the trial court held:

"In transporting county and state prisoners between the county jail at Pineville and courts of Middlesboro in the same county (Justice of the Peace, Middlesboro Police Court, and the Circuit Court, when sitting there) the jailer used and furnished his own automobile, including oil and gasoline necessary therefor. A round trip is approximately 26 miles. A minimum of 343 such round trips were made and 8,918 miles traveled in so transporting prisoners, in compliance with the orders and directions of these courts in 1950, 489 round trips or 12,714 miles so traveled in 1951, 664 round trips or 17,274 miles so traveled in 1952 and 416 round trips or 10,816 miles so traveled in 1953. In line with KRS 44.060, the Court finds that the reasonable expense to the jailer in so transporting prisoners with his automobile was seven cents per mile traveled, or the sum of $624.26 in 1950, $889.98 in 1951, $1,208.48 in 1952, and $757.12 in 1953."

■ In the City of Fulton case, the matter of allowance of expenses, which might properly be deducted from the gross receipts, was not presented. In that case the jailer asserted a claim against the city to recover from it his expense of transporting prisoners. Recovery was denied under Kentucky Statutes, Section 1749, that permitted him no recovery for services where the law had not fixed compensation for it. We think the trial court properly allowed these legitimate expenses. The other items for miscellaneous expenses, which included ice, ink, pens, pencils, writing materials, et cetera, furnished by the

jailer to the circuit court and the grand jury, we believe were also correctly allowed.

The judgment is affirmed.

BIRD, J., not sitting.