## Waddle et al. v. City of Somerset et al.

Dec. 15, 1939.

W. B. Morrow and M. L. Jarvis for appellants.

Chris L. Tartar for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This equity action was filed by plaintiffs and appellants as taxpayers in the city of Somerset, which is one of the fourth class, against the city, its board of councilmen, the members thereof, and its city treasurer, whereby plaintiffs object to many alleged defalcations on the part of the city in the management of its fiscal affairs in the unlawful and forbidden expenditure of its revenue and which plaintiffs seek to enjoin. The immediate incentive to the filing of the action appears to be the proposed action of the city, as manifested by a resolution of its board of councilmen, to have a new map made of the city showing its streets, alleys, and other necessary important data usually contained in such a document,

and which the resolution provided should not exceed the cost of $450. However, after objecting to that particular expenditure, as the immediate incentive to court action, plaintiffs increased and added to their list of complaints by objecting to a number of other past as well as contemplated actions on the part of the city involving the disbursement of its revenue, all of which they claimed was illegal and invalid as being in excess of the revenue which the city might under the law raise and expend for its municipal purposes.

Defendants were sought to be enjoined from paying any such alleged illegal indebtedness, because its creation—as alleged—was forbidden by Section 157 of our Constitution. Therefore, the foundation for all of the complaints made in the petition is, that each item of assailed indebtedness is or will be in excess of the revenue provided for the particular fiscal year of the city and, therefore, in conflict with the mandatory provisions of the cited section of our Constitution. However, the objections to two of the items complained of are also based upon the additional ground that in no event may the city expend its finances in their acquisition. They are the procurement of the new city map; and the other being rent payments for certain premises which the petition avers is leased by the city, but was not, at the time the action was filed, actually in use by it—the rental being $35 per month. The petition was amended the second time, after which plaintiffs' demurrer filed to it as amended was sustained and upon their declining to plead further the court dismissed it, to reverse which they prosecute this appeal. The petition as drawn approaches very near to a request made to the court to take charge of the city's fiscal affairs and superintend and direct the expenditure of its revenue to the exclusion of its board of councilmen.

In an unbroken line of opinions—with none to the contrary—we have held, in construing the section of the Constitution referred to, that to make a municipal debt invalid as invading its provisions an assailant thereof must both plead and prove, if denied, facts showing the alleged invalidity.

We also pointed out in those opinions what facts the assailant of the indebtedness should plead and prove under that rule in order to succeed in his litigation. They are, that all sources of revenue for that particular fiscal year should be averred, and if a part of the reve-

nue was derived from ad valorem taxes, then the rate of taxation, as well as the amount of assessed property, should be stated, and if the total amount of revenue provided for that year is shown, then it should be averred that the municipality *at the time* of contracting each item of indebtedness objected to had already expended or contracted to spend all of its revenue provided for *that* year, leaving none in its treasury for defraying the indebtedness assailed, and for which there were no provided, though uncollected, funds with which to meet it. No such allegations are contained in the petition as to some of the essential facts, but only general conclusion averments are made to the effect that each assailed obligation was contracted "in excess of the revenue provided for that year," which was and is but the conclusions of the pleader, and which justified the trial court in saying in its judgment that "the Statements are not specific enough to justify the relief sought."

In the course of plaintiffs' pleadings they enumerate some of prior city bonded and funded indebtedness, one particular issue of which they aver has been paid, but the city has not destroyed the bonds thereby extinguished, and they ask the court for a mandatory order requiring the city to make such destruction. However, we know of no law by which public authorities may be enforced to take the usual and ordinary precautions against possible future happenings that may occur because of uncancelled and undestroyed evidences of indebtedness which the city has extinguished by payment. Also, a considerable portion of plaintiffs' pleadings is devoted to challenging the right of the city to borrow temporarily needed funds in anticipation of the future collection of the revenue for the current fiscal year, but to be paid when such collection was later made.

No complaint is made that the anticipation was recklessly calculated or unauthorized from the provided sources of revenue if eventually collected; but it *is* argued that such action creates a debt that is forbidden by law. However, we have held in a number of cases that the acquirement of immediate and necessary funds when not exceeding a bona fide anticipation of final collections for the year in which the funds are procured is not the creation of inhibited indebtedness; and which brings us to a consideration of plaintiffs' objections to the proposed contract for a new map of the city, and in its payment of the rent item complained of.

Neither the Constitution nor any statute attempts to enumerate each and every object or purpose for which a municipality may expend its funds within the general compass measuring such authority, since to do so would be practically impossible, as well as unwise. Therefore, many purposes may be undertaken by municipalities under necessarily implied authority possessed by them in carrying out expressly conferred urgent and needed governmental action for the particular locality, and which statement of the rule is not in conflict with the broader one saying that ''The authority of municipalities consists of that which is expressly conferred and that which is necessarily implied therefrom.'' We have no hesitancy in concluding that an uptodate (or practically so) map of the city, accurately showing its streets, alleys, public buildings, &c., is of vital necessity to the city, since a major part of its governmental functions is the providing for and maintenance of its streets, alleys and public buildings; also in providing for public utilities that may serve both the city and its inhabitants, such as laying of pipes through the city for water or gas, the stringing of wires for conducting electric currents, the location and construction of sewers, &c. It does not appear that the price proposed to be paid for the map is arbitrary or excessive to the extent of authorizing court interference—the complaint being that the city has no authority to expend its funds for any such purpose. The trial court adjudged otherwise and we coincide therewith.

But it is insisted that the proposal to contract for the map was made by a resolution instead of a duly enacted ordinance and for which reason it is invalid. But, counsel point out no express statute or opinion of this court of such a mandatory character. On the contrary we held in the case of Masonic Widows' & Orphans' Home v. City of Corbin, 229 Ky. 375, 17 S. W. (2d) 215, that a similar expenditure could be contracted by resolution of the city counsel as effectually as could be done by a duly enacted ordinance. See also the text in 19 R. C. L. page 895, Section 194. If there existed a statute expressly requiring such action to be taken by a duly enacted ordinance it might then be questionable whether it could be done by a resolution, but in the absence of such a statute it appears to be universally held that a duly passed resolution is all that is required.

The remaining complaint concerns the rent item ob-

jected to by plaintiffs. In presenting that complaint plaintiffs in their pleadings say: ''That the city of Somerset has been and is now paying one J. H. Pinnell thirty-five dollars per month as rental on property known as the Newman property on South Main Street in the City of Somerset, property that the City is not using; that the City expects and will continue to pay said rental; that the City is not getting any value out of said property and avers that it has no right or authority to rent same or to pay any rental thereon; that the property is not being used or rented for corporate or municipal purposes, that the city has been paying the said J. H. Pinnell thirty-five dollars per month during the past few months.''

It will be perceived that nothing is averred concerning the purpose for which the premises were originally leased by the city, nor whether that purpose had been fulfilled and completely accomplished. It might well be that at the particular time when the petition was filed the property for some legitimate cause was temporarily unoccupied, while at the same time its possession was held by the city under the rental contract for future governmental use in conformity with the original purpose in renting it. The City of Corbin case, supra, sustains the authority of a municipality to rent premises for its governmental purposes in certain contingencies. Anyone objecting thereto is called upon to point out a violation of such proposed exercise of authority. Plaintiffs' averment in their petition does not do that. Therefore, it was also defective with reference to this item.

Apropos to our statement supra that the practical effect of plaintiffs' request of the court is to have it take charge of and manage and expend the revenue of the city, we insert, as a part of the prayer of the petition, this excerpt: ''And that the city of Somerset and its mayor and Board of Council be perpetually enjoined and restrained from borrowing any money by pledging the revenue of the city for the payment thereof, if in excess of the revenue and income for the current year and unless same, is by an ordinance of said City passed, approved, and published as required by law.'' In other words, the court is asked to exercise its extraordinary restraining authority to compel the city authorities to obey the law in the future, and to not depart therefrom, notwithstanding the law itself imposes such duty, and which cannot be made more mandatory by a superin-

duced order from the court, even if it possessed any such authority, but which it does not. We have refrained from following each detailed argument of counsel with reference to collateral issues, each and all of which are advanced in support of the major contentions we have mentioned and disposed of. We have so refrained because space and time forbids such an undertaking, and the arguments referred to are immaterial to the ultimate disposal of the grounds of the complaints.

Wherefore, for the reasons stated, the judgment is affirmed.