## Reeves, Com'r of Revenue, v. Talbott, Com'r of Finance.

Dec. 16, 1941.

582

Smith & Leary for appellant.

Hubert Meredith, Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

By this action, H. Clyde Reeves, Commissioner of Revenue, sought a writ of mandamus requiring J. Dan Talbott, Commissioner of Finance, to approve an application for travel at the expense of the State to Milwaukee and St. Paul, Minnesota, on October 9 to 16, 1941, on official business. The circuit court refused the writ, dismissed the petition and granted an appeal. The appeal was perfected September 23d, and a motion made by the appellant to advance, docket and submit the case. The next day he filed his brief on the merits, and the Attorney General, representing the appellee, filed objections to the motion and a brief in support of it. The case was ordered docketed and advanced and the appellee given to October 31st to file brief on the merits. Instead,

on November 26th, he filed a motion to dismiss the appeal and a brief in support of it. The grounds were that the case had become moot and the amount involved was not sufficient to give the court jurisdiction. The motion was overruled on the 28th and the appellee given until December 8th to file brief on the merits, and it was done on that day. In it the Attorney General asks the court to reconsider his motion to dismiss the appeal because the case has become moot, as the trip for which authorization was asked was to be made October 9th to 16th, as above stated.

Ordinarily, the court refuses to consider any case when it has become moot, for it is our duty and function to determine only real controversies relative to legal rights actually involved in the case. But the condition here has arisen through no fault of the appellant for he filed his appeal in ample time to secure a decision and it was delayed by the opposing party. One of his objections to the advancement of the case was, "The Commissioner of Revenue can well afford to advance this sum for his own expenses and await decision of this court." We construe this as an implied waiver of the question of the case becoming moot in so far as the appellee is concerned. It appears from a statement in appellant's brief in response to the motion to dismiss the appeal that he made the trip as contemplated. That is not challenged. He cannot secure a refund of his legitimate expenses unless the authority be given retroactively. So it must be said that the lapse of time has not disposed of the controversy, the real basis of which is the appellant's right to have the state bear the expense of the trip. The unusual circumstances, especially since the controversy concerns public rights and interest and should be speedily settled, justify our consideration and disposition of the controversy. 1 C. J. S., Actions, Section 17, page 1017; McCoy v. Carran, 179 Ky. 590, 201 S. W. 463.

On a form prepared in accordance with the terms of Section 1992b-27, of the Statutes, Mr. Reeves, as the administrative head of his department, filed with the Commissioner of Finance a requisition for "letters of travel authorization for travel outside of Kentucky" as prescribed by Section 1992b-28. This disclosed the places it was proposed to travel, the dates and the manner of conveyance to be used, and stated the expense would not exceed $100. It declared the purpose of the trip to be:

"To attend the National Tobacco Tax Conference and the National Tax Association for the purpose of becoming informed of tax developments in other states, and of making investigation thereof through interviews with the attending administrators, as is contemplated in Section 4618-91 of the Kentucky Statutes, 1936 edition."

When the requisition was received it became the duty of the Commissioner of Finance (in substitution for the Auditor) to examine or have an assistant examine the same promptly and "ascertain whether or not the proposed expenditures are authorized by the appropriations and allotments to which it is proposed to charge them, and that the amounts involved do not exceed the unencumbered balances of such allotments. If any proposed expenditure cannot be approved by the Auditor [now Commissioner of Finance] under the provisions of this Act, he shall promptly notify the head of the budget unit concerned that the proposed expenditure is disallowed." Section 1992b-29, Statutes. The law provides if such a requisition shall be approved, a prescribed certificate shall be stamped on the form. Idem. A photostatic copy of Mr. Reeves' original application does not bear either the approval or disapproval of the Commissioner of Finance. It is endorsed "Disapproved" over the signature of the Attorney General.

The petition for mandamus set forth the application and its filing in conformity with the statute, and alleged that the defendant "on advice of the Attorney General of Kentucky failed and refused to approve said authorization for out of state travel and wholly refused same." It described the nature of the conferences and alleged the necessity and importance of the plaintiff attending them on official business connected with his duties as Commissioner of Revenue. It stated his general duties as chief administrative officer of the Department of Revenue, and particularly his duty under Section 4618-97 of the Statutes, which provides that the Division of Research and Statistics in the Department, under the direction of the Commissioner of Revenue, shall have the duty "to make such investigations into matters of taxation in Kentucky or elsewhere as may from time to time be required by the Commissioner of Revenue."

The answer denied the necessity of the plaintiff making the proposed trip on official business and raised

issues in respect thereto. The defendant admitted that he had refused to approve the authorization upon the advice of the Attorney General, but denied that in doing so he had refused to perform his duty. The answer further alleged in substance and effect that he, as Commissioner of Finance, has a discretionary right to approve or disapprove such applications, and for reasons stated in the pleading that he had properly exercised that right in refusing to authorize the plaintiff to incur the expenses.

Evidence was heard by the court on issues joined by a reply. This evidence, we think, fully justified the proposed trip and showed that it would probably be profitable to the Commonwealth. Apparently the trial court had the same view. However, he construed the opinion in Shanks v. Commonwealth, 219 Ky. 212, 292 S. W. 837, as precluding the granting of the mandamus.

In that case a majority of the Court were of the opinion that it was not a part of the official duties of the State Auditor to attend a convention of such officers in Salt Lake City, and that authorization by the Commissioners of the Sinking Fund for him to make the trip at public expense was not conclusive of his right to reimbursement. On the first point it was believed that the benefit which the State might receive through the attendance of the Auditor would be too remote and intangible to constitute it official business. It was realized, however, that some official duties do require travel outside the State; yet, because the privilege had been abused when each officer was the sole judge of the necessity or justification of the expense, the legislature had quite lately prohibited the same "except on official business, and then only after a request to make such trips has been filed in writing with the commissioners of the sinking fund and authority to make same has been approved by the said commissioners of the sinking fund." That statute was construed as not vesting in the Commissioners of the Sinking Fund the authority to determine whether or not the proposed trip would be made on official business, but to determine the propriety and wisdom of incurring the expense, even though the trip might be in the discharge of official duties. Two judges dissented from the decision that the trip could not be regarded as being on official business. Another judge dissented from the view as to the purpose and effect of the approval of the Com-

missioners of the Sinking Fund, believing that their authority was to pass on both the character of the business to be transacted and the justification of the expense; that the Board was vested with discretionary power to determine these matters and the Court should not interfere with its exercise unless their discretion had been abused, or their jurisdiction exceeded. In that particular instance they were of opinion the Court should not interfere. The Shanks case should be regarded as decisive of the particular facts under the prevailing law. We reconsider the questions in the light of the change in the Statutes.

The provision of the statute construed in the Shanks case was contained in the annual appropriation act for the operation of the several state departments for the fiscal year ending June 30, 1925. Chapter 112, p. 373, Acts of 1924. The same provision was carried into the budget act of 1926. Chapters 11 and 12, pp. 59, 85. It was omitted from the 1928 Act. The appropriation of funds for the departments for the next two years, 1930 and 1931, was contained in one act (Chapter 164, Acts of 1930) and it provided that no officer or employee should be allowed expenses for travel outside the state except on official business and the authority of the sinking fund commissioners, but several officers and the employees of the State Tax Commission were excluded from that restriction. The budget act of 1932 for the ensuing biennium contained no provision in respect to travel outside the state.

In 1934 the legislature adopted an improved system of budgetary control of the State's expenditures. Chapter 25, Acts 1934; Section 1992b-1 et seq., Statutes. This contains the permanent provision in relation to letters of travel to which we have referred. Sections 1992b-28, 1992b-29, Statutes. The Governmental Reorganization Act of 1936 (1st Ex. Sess., c. 1, now Section 4618-68 et seq., Statutes) does not affect that statute except to transfer the duties of the Auditor to the Commissioner of Finance, unless there is some inconsistency or conflict. There is none in the particulars under consideration. The 1934 Act recognizes that the discharge of the full duties of state officers and employees may require them to go outside the State, but conditions the expenditure of public funds for that purpose upon the making of a formal requisition by the head of the department and

the approval of the Commissioner of Finance as above outlined. The current statutes governing the executive department, in general, do not either prohibit or expressly authorize travel outside the State. But the authority is necessarily implied in the terms of the 1934 Act. Sections 1992b-28 to 1992b-30, Statutes. However, in the statute governing the Department of Revenue it is expressly declared to be the duty of the Division of Research and Statistics to make investigation into the matters of taxation either in the State or out of the State, as may be required by the Commissioner of Revenue. Section 4618-97, Statutes. The legislature realized that the determination of incurring expenses for travel outside the State had to be left to the discretion of somebody, and believed it could well be left with the heads of the departments to whom it had granted so much greater and more important powers. But that is not all. Doubtless realizing that the strength of our form of government lies in its system of checks and balances which curbs the abuse of official power, the authority to approve or disapprove the action of the heads of departments in such matters, as well as in other contemplated disbursements, was lodged with the Commissioner of Finance. Section 4618-85, Statutes. It appears then that the concurrent authorization of both officers is necessary before an official or employee may procure a refund of expenditures for travel outside the State, as provided by Sections 359a-1, 359a-4 of the Statutes.

There emerge, therefore, questions of the power and duties of the heads of the departments and of the Commissioner of Finance, separate and relative. It seems to us that there is broad discretion lodged in the heads of the departments, as defined in the Governmental Reorganization Act of 1936, in the matter of determining whether any expenditure of funds within the limits of the appropriations for the operation of the departments are legitimate and justifiable. Honesty and integrity are implicit in men qualified for such high executive officers and worthy of the appointment by the chief executive of the state or the election by the people. They constitute the Governor's Cabinet. Section 4618-147, Statutes. When they make requisitions for the approval of the Commissioner of Finance it is but in anticipation of the presentation of a proper and valid claim for reimbursement or payment of expenses incurred.

The duties of the Commissioner of Finance in this connection are declared in Section 1992b-29, which we have quoted above. Those specific duties relate to the ascertainment of the legality of the anticipated claim under the appropriation acts and whether they will exceed the unencumbered balance of the allotment of funds to the department. However, the Commissioner of Finance in addition to having many other extraordinary specific powers is the "chief financial officer of the State and the advisor of the Governor and the General Assembly in financial matters," and as such is "charged with protecting the financial interests of the State." Section 4618-86, Statutes. He is also charged with the duty of "coordinating and supervising the fiscal affairs and fiscal procedures of the State to insure the carrying into effect of the definite financial policies and plans approved by the General Assembly." Section 4618-85, Statutes. He is, in common parlance, the "watchdog of the treasury." So it must be said that his duties in this respect, as in others involving the expenditure of public money, embrace much more than that of an accounting officer. He has some discretion in passing on the propriety and justification of the proposed expenditures.

Considering the relative rights and powers of the heads of the departments and of the Commissioner of Finance in these matters, it seems to us that when an executive officer makes a requisition in accordance with the Statutes, the exercise of his discretion as to the propriety and legitimacy of the travel outside the state is entitled to high regard and influential consideration. It is especially his responsibility. If the requisition reveals a good and sufficient reason for incurring the proposed expenditure, we think the Commissioner of Finance should regard it as prima facie valid and proper and that he may rely upon those representations and approve the requisition if the purpose is within the scope of the appropriation for the department and the amount is within the unexpended balance to the credit of the particular fund. If that is the condition he will be shielded from liability. It is not to be overlooked that that officer has a second chance to review and control the payment of the claim for reimbursement when it shall be presented. Sections 340, 359a-1, 359a-4, Statutes. On the other hand, if in the exercise of a sound judgment the Commissioner is of opinion that the proposed travel is not legitimate or proper, considering the functions of the

department and the nature of the duties of the officer or employee and, as well, the purpose and character of the business to be attended to, or if he regards the proposed expenditure as prima facie excessive, or if he ascertains that it will exceed the balance of funds allotted to the department, he should disapprove the requisition in the manner prescribed by the statute.

Always, questions as to the exercise of administrative discretion are justiciable and an aggrieved party is entitled to a judicial review. But out of regard for the powers of a co-ordinate branch of the government and the rights vested in it by law, the courts will interfere only when there has been an abuse of discretion to the unjust detriment of a party or his rights.

Coming back to the consideration of the record before us. The Commissioner of Finance should have acted on the requisition of the Commissioner of Revenue in the manner prescribed by the statute, exercising his own discretion, although it was, of course, proper for him to rely on the opinion of the Attorney General as to the legality of the proposed action. However, the record made in the court discloses that the request for the authorization was refused. It seems to us that the requisition showed prima facie reason and justification of the proposed trip, factually and legally, since the Statutes make it the specific duty of the Revenue Department to study and investigate tax matters either within or without the state. Under the peculiar facts the rejection of the requisition can hardly be deemed arbitrary or an abuse of discretion; but it was based upon a misconstruction of the applicable law. The effect was to deprive the Commissioner of Revenue of a right which on a correct construction of the law would have been recognized.

The judgment is, therefore, reversed with directions to enter another awarding plaintiff a writ of mandamus requiring the Commissioner of Finance to approve the requisition retroactively.

Whole Court sitting.

Judge Thomas dissents from so much of the opinion as holds the court should interfere, the Commissioner of Finance having exercised a discretion in disapproving the requisition.