## Louisville And Jefferson County Board Of Health v. Steinfeld.

December 17, 1948.

Gilbert Burnett and Alex P. Humphrey for appellant.

Samuel Steinfeld for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS— Reversing.

This declaratory judgment action was filed by appellee, Samuel Steinfeld, as a resident and taxpayer of the City of Louisville and the County of Jefferson, and as County Attorney for the latter, against appellant, Louisville and Jefferson County Board of Health (hereinafter referred to as the Board). He questions the Board's right to reimburse one of its executives for expenses incurred in attending a medical meeting in Memphis, Tennessee, and its right to expend a sum in excess of $2000 included in its budget for the fiscal year 1946-7 for travel purposes; and he asks that the Board be enjoined from so doing.

The Board answered that it was necessary for certain of its executives and employees to make outstate trips in attending meetings of the American Health Association to obtain and collect information regarding public health practices. That this travel is undertaken by its executives and employees to qualify and equip themselves more fully and intelligently to carry out the duties demanded by the public health of the community, and is for a public purpose and benefit; and the information thus obtained was utilized in public health administration in Louisville and Jefferson County.

A general demurrer was sustained to the answer, the Board refused to plead further and the chancellor adjudged that the Board was without authority to pay the expenses of its members or employees in attending medical meetings, schools, institutions or conferences to better qualify themselves to discharge their duties. The Board was enjoined from incurring such expense, and it appeals.

The Board was created by KRS 212.350 as a city-county board of health for cities of the first class and counties containing such cities. This section authorizes it to "make appropriate rules and regulations and to do all things reasonable or necessary effectively to carry out the work and properly to perform the duties intended or required by KRS 212.350 to 212.620." It is provided in KRS 212.370 that when formed the Board shall, except as otherwise provided by law, have exclusive control and operation under the Acts of the General Assembly, the municipal ordinances, the orders of the fiscal court, the regulations of the State Board of Health, and the rules and regulations of the Board, of all matters relating to institutions safeguarding the public health. This section further provides:

"The board may expend funds for the purpose of conducting research work, including laboratory and biometrical work, and establishing, erecting and maintaining laboratories and other buildings and all appurtenances thereto for research work as to the prevalence, causes, cure, and prevention of disease, and to that end the board is authorized to expend funds in the employment of such persons or organizations, scientists, or research experts as the board may deem proper. The board shall

be charged with the responsibility for the collection from official and other sources and for the publication of such statistics and information as may be useful and necessary for the performance of its duties * * *.''

The Board admits that all of its power is derived from the Legislature and there is no specific statutory authorization for reimbursement to its executives or employees for expenses incurred in attending medical meetings and conventions in the search of information on health; nor is there such authorization for it to incur expenses in its personnel traveling to or attending such outstate meetings. If such expenses are legitimate, they arise by necessary implication in carrying out expressly conferred powers. Waddle v. City of Somerset, 281 Ky. 30, 134 S. W. 2d 956.

The excerpt quoted in the second paragraph above from KRS 212.370 authorizes the Board to expend funds for the purpose of conducting research work and it is charged with the responsibility for the collection and publication from official and other sources of such statistics and information as may be useful in the performance of its duties. These and other broad powers conferred upon the Board by the statutes come very near expressly authorizing it to pay the expenses of its officers and personnel in attending medical meetings. Certainly, by necessary implication the statute authorizes this expenditure, since there is hardly any other practical way whereby the information can be obtained by public health officers except in attending such medical meetings.

It may be argued that they could remain at home and gather this information by reading medical journals and the proceedings of meetings held by doctors. But it is common knowledge that hearing some eminent specialist lecture, engaging him in conversation thereafter and seeing him demonstrate and put into practice his theory, is much more enlightening than reading of it in a journal. A Chinese proverb says, ''One picture is worth a thousand words.'' If that be true, then the actual demonstration by a scientist of some new medical discovery is worth many pictures of it.

The answer avers that at the meeting of the Southern Branch of the American Health Association held

in Memphis (and it was the expense of $37.24 of a member of the Board in attending this meeting which precipitated this action) there was a discussion on the common problems of health administration by the Board's representative with other members who attended a symposium on hospital and sanitary construction; also he attended another symposium on tuberculosis, its control in urban and rural communities; another on public health administration; another on recruiting and training of public health personnel.

It is further pleaded in the answer that of an appropriation of $1,877,000 for the fiscal year of 1946-7, there had been expended in outstate travel up to the time of the filing of this suit on May 27, 1947, only the sum of $1603.13. Therefore, it can hardly be said that the Board is allowing an unusual amount of its budget to be spent in outstate travel in collecting information and statistics relative to their duties as public health officers.

It appears that a resolution was adopted by the Board providing that travel allowance will be approved only if directed by the Director of Health. The expense is limited to $10 per day and actual railroad fare, and 25% of the entire expense must be borne by the individual making the trip. This resolution is persuasive that the Board intends to see that no abuse will occur in outstate travel. However, should abuse arise, then any aggrieved party has access to the courts.

Appellees put much reliance in Bruner v. Jefferson County Fiscal Court, 239 Ky. 613, 40 S. W. 2d 271; Jefferson County ex rel. Grauman v. Jefferson County Fiscal Court, 269 Ky. 768, 108 S. W. 2d 810, and Shanks v. Commonwealth, 219 Ky. 212, 292 S. W. 837. These cases are clearly distinguishable from the instant one.

In the Bruner opinion it was said that the fiscal court possesses no authority not expressly or impliedly delegated to it by some provision of law. That KS sec. 1840 (now KRS 67.080(8), making provisions for the maintenance of the poor, did not authorize the fiscal court to appropriate $750 to be expended by the county judge for a juvenile court Christmas party, even though gifts of food and clothing were to be made to a portion of the needy people of the city and county. This party

did not provide for the poor of the county as contemplated by the statute.

In the Jefferson County case, 269 Ky. 768, 108 S. W. 2d 810, this court reversed a judgment authorizing an appropriation by the fiscal court of $500 to pay the expenses of a director of welfare and of a probation officer in attending a national conference of social workers held in Atlantic City in 1936. We there said the statute relative to probation officers, KS sec. 331e-3 (now KRS 199.240(4), ''salaried probation officers shall be allowed their actual and necessary expenses incurred in the performance of their duties,'' did not include expenses incurred in attending outstate conferences. That KS sec. 1840 (now KRS 67.080(8), relative to caring for the poor, did not provide for the expenses of a welfare officer in attending an outstate conference. We there said the statutes neither expressly nor by necessary implication authorized the fiscal court to appropriate funds for educational purposes, as it was presumed these officers were qualified for the performance of their duties before they were employed. That opinion was based largely on the Shanks case, 219 Ky. 212, 292 S. W. 837.

The statute involved in the Shanks case forbade the allowance for travel expenses outside of Kentucky except on official business. The view expressed in the majority opinion seems to be that the Auditor in attending a conference in Salt Lake City was endeavoring to educate himself, but that any benefit the Commonwealth might reap from the meeting was so remote it could not be said the Auditor was on official business. Three judges dissented from the decision. Two judges dissented on the ground that the trip should be regarded as official business. The third judge dissented because he was of the opinion that as the Sinking Fund Commissioners had the discretion to approve the trip, the court should not interfere, unless that discretion was abused or their jurisdiction exceeded.

In the later case of Reeves v. Talbott, 289 Ky. 581, 159 S. W. 2d 51, it was pointed out that the Shanks case, 219 Ky. 212, 292 S. W. 837, was decisive of the particular facts under the law prevailing when it was decided in 1927. The statute under consideration in the Reeves opinion, KS sec. 4618-97 (now KRS 131.080), expressly

made it the duty of the Division of Research and Statistics to investigate "matters of taxation in the state or elsewhere as may be required by the commissioner, and submit reports on the results of its studies in the form prescribed by the commissioner." We there held that from the use of these words it was necessarily implied that outstate travel was authorized by the statute.

So in the case at bar, when the Legislature authorized the Board to "expend funds for * * * research" and charged it with the responsibility "for the collection from official and other sources and for the publication of such statistics and information as may be useful and necessary for the performance of its duties," the necessary implication is that the Board may bear the expense of its officers and employees in attending medical meetings outside of the State where such research information and statistics may be found.

For the reasons given the judgment is reversed with directions that one be entered in conformity herewith.