Marshall FUNK, Warren County Attorney, etc., et al., Appellants,

v.

John M. MILLIKEN, Individually, et al., Appellees.

Court of Appeals of Kentucky.

June 13, 1958.

As Modified on Denial of Rehearing Nov. 28, 1958.

Jo M. Ferguson, Atty. Gen., Edward L. Fossett, Asst. Atty. Gen., for appellant.

Aaron F. Overfelt, Bowling Green, for Marshall Funk, individually.

Henry J. Potter, Jr., Bowling Green, for Oval Motley.

Leland H. Logan, Bowling Green, for Carl Jordan.

August Winkenhofer, Jr., Bowling Green, for J. Scott Lowe.

Parker W. Duncan, Bowling Green, for A. L. Douglas.

G. D. Milliken, Jr., Bowling Green, for Raymond McClard.

Robert M. Coleman, Bowling Green, for S. C. Lawson.

Leland H. Logan, Bowling Green, for L. C. Stanley.

Charles W. Dobbins, Louisville, and Salem W. Moody, Richmond, as amicus curiae.

CULLEN, Commissioner.

This action was brought by the county attorney, county judge, county treasurer, and magistrates of Warren County, in their official capacities, against the persons who, in 1954, held the offices of county attorney, county judge, county court clerk, circuit court clerk and master commissioner, magistrates, jailer, sheriff, and constables. All of the offices occupied by the defendants were operated wholly or in part under the *fee* system. A declaratory judgment was sought upon a detailed list of questions that had arisen upon an audit of the accounts of the various defendants, for the year 1954, involving the amounts allowable as personal compensation, and the amounts that properly could be credited against fees for office expenses and for compensation of deputies and assistants. The circuit court entered a judgment making declarations on the questions raised. The plaintiffs have appealed, agreeing with some of the declarations and disagreeing with others, and they are represented on the appeal by the Attorney General. There also are

cross-appeals by the defendants who held the offices of county attorney and jailer, and by one of the defendants who held the office of magistrate.

We will discuss the various questions under descriptive headings.

### I. Personal Compensation

#### 1. Circuit Court Clerk and Master Commissioner

■ The same person held the offices of circuit court clerk and of master commissioner. Prior to his election as circuit court clerk, the fiscal court had entered an order under KRS 64.530 fixing his maximum compensation for that office at $7,200 (the constitutional limit under Section 246 of the Constitution of Kentucky). For the year 1954 he had net earnings as circuit court clerk, after deducting office expenses and the compensation of his deputies, in the amount of $7,590.44. This indicated an excess of $390.44 to be paid over to the county. However, he also received net earnings as master commissioner of $1,879.-20. The question is whether he may retain this as compensation, in addition to the $7,-200 received as circuit court clerk. The lower court held that the two offices were completely separable, and that the compensation as master commissioner could be retained.

The judgment is clearly wrong on this point. Under Section 246 of the Constitution, the compensation of any public *officer*, other than those specifically named in the section and those having statewide jurisdiction, cannot exceed $7,200. The limit applies to the person, regardless of the number of offices he may hold. See Coleman v. Hurst, 226 Ky. 501, 11 S.W.2d 133; City of Louisville v. Gorman, 286 Ky. 477, 150 S.W.2d 931; Barker v. Barnes, Ky., 248 S.W.2d 901. Furthermore, KRS 64.620 provides that the compensation of any local officer, "for services rendered in one or more offices or positions of employment," shall not exceed $7,200. And KRS 64.530(1)

provides that for the purposes of fixing compensation, master commissioners "shall be deemed to be county officers".

The judgment should require that all net earnings of the combined offices in excess of $7,200 be paid over to the county as excess fees.

#### 2. Magistrates

■ Two of the defendant magistrates, who held court, received net earnings for 1954, after deduction of allowable expenses, in excess of $5,000. The question is whether the limit on their compensation was $5,-000, or $7,200. The lower court held that the limit was $5,000.

Under the 1949 amendment to Section 246 of the Constitution, and under the 1950 "Salary Act," KRS 64.480 to 64.760, compensation up to $7,200 per annum is *authorized* to be fixed for local officers. However, KRS 64.700 provides:

"Until such time as the public officer or body authorized by KRS 64.480 to 64.760 to fix the compensation or the limits of compensation of a public officer or employe exercises such authority with respect to such officer or employe, the compensation of such officer or employe shall not exceed that fixed under the statutory law in force and effect prior to June 30, 1950, or, in the case of any officer whose compensation was limited only by the Constitution and not by statute, shall not exceed the limit fixed by Section 246 of the Constitution prior to its amendment. * * *"

At no time between June 30, 1950 (the effective date of the Salary Act) and the election of the defendant magistrates in 1953 did the fiscal court of Warren County exercise its authority to fix the limits of compensation for magistrates. Accordingly, the lower court was correct in holding that the old constitutional limit of $5,000 still governed. See Cheshire v. City of Frankfort, Ky., 272 S.W.2d 37. See also Shamburger v. Duncan, Ky., 253 S.W.2d 388.

The lower court included in its judgment a statement that since no maximum compensation for the office of magistrate had ever been fixed by the fiscal court, that body could *now* fix the compensation for the terms that began in 1954, not to exceed the limit of $5,000. We think this ruling is incorrect. Under KRS 64.730, when the compensation has not been fixed by the first Monday in May in the year of election, the compensation is to be the same as for the preceding term. We think this means that the compensation can neither be increased nor reduced. Accordingly, since the 'compensation limit for the preceding term was $5,000, the fiscal court cannot now reduce it below $5,000 for the term that began in 1954. The former rule, as to the authority to fix a compensation after the term commences, when no compensation previously has been fixed, was changed by KRS 64.730. See Upton v. Whitley County, Ky., 256 S.W.2d 3.

### 3. Constables

The pleadings indicated that one of the defendant constables had received net earnings for 1954 in excess of $5,000, and that a controversy existed as to whether the compensation for constables was $5,000 or $7,200 per annum. The lower court dismissed the action as to the constables, on the ground that no actual controversy existed. We think this was error.

The situation with respect to a compensation limit for the constables was exactly the same as it was for the magistrates, as above discussed, and the judgment should have made an adjudication the same as the one we have directed concerning the magistrates.

### 4. County Attorney

A question is presented as to whether the county attorney is entitled to receive the percentage of fines and forfeitures prescribed by KRS 69.260(1) (a), and the taxed fee prescribed by KRS 69.260(2), in prosecutions in quarterly court or magistrates's court in which he does not appear

nor participate. The lower court held that the percentage should be paid and the fee taxed except in instances where the county attorney "fails to attend or to participate" in the prosecution after having received *written notice* to attend under KRS 455.040.

Subsection (1) (a) of KRS 69.260 provides that the county attorney shall receive 40 percent of "all fines and forfeitures recovered in prosecutions before a county judge or magistrate." Subsection (1) (b) allows him a percentage of the fines and forfeitures recovered in *circuit court* "in those cases in which he is present and assists in the prosecution," and subsection (1) (c) allows him a percentage of the fines and forfeitures recovered in *police court* "in those cases in which he is present and prosecutes." Subsection (2) provides that when a fine or forfeiture recovered before a county judge or magistrate is less than $25 the county attorney shall be allowed a fee of $5 to be taxed as costs.

KRS 455.040 states that any magistrate before whom an arrested person is brought for trial shall give written notice to the county attorney of the time when and the place where the trial will be held, "and that his presence is required."

Subsection (2) (c) of KRS 64.410 prescribes that no officer shall demand or receive any fee for services not actually rendered.

On behalf of the county attorney it is argued that since subsections (1) (b) and (1) (c) of KRS 69.260 require actual presence and participation in circuit court or police court as a condition of receiving the fee, whereas subsection (1) (a) does not so require as to quarterly court or magistrate's court, presence and participation are not a condition of receiving the fee in the latter courts. It also is argued that the county attorney constantly is rendering service to the quarterly courts and magistrate's courts, through advice and consultation with the judges; that arrested persons often plead guilty because they know the county attorney can be available to

prosecute them; and that there is no need for the county attorney to be present in cases where there is a plea of guilty.

The appellants maintain that the difference in wording between the various subsections of KRS 69.260, as concerns the requirement of presence and participation, is due to the fact that in circuit court the commonwealth's attorney normally is responsible for the prosecution, and in police court the city attorney has primary responsibility, so it was necessary for the statute to state specifically the circumstances in which the county attorney may receive a fee in those courts; but since the county attorney is the sole prosecuting officer for quarterly court and magistrate's court, there was no such necessity as to those courts. The appellants further point to the fact that under KRS 64.410 (2) (c) an officer cannot receive a fee for services not actually rendered.

It is our opinion that the proper construction of the involved statutes should be that if the county attorney, though not physically present, actually renders some service in the particular case in quarterly court or magistrate's court, by some means of communication with the court, he is entitled to the fees, and the question of whether or not the written notice prescribed by KRS 455.040 has been given is not material. If he does not render any service in the particular case, he is not entitled to the fees. The judgment should have so declared.

## II. Allowable Expenses

### 1. General Considerations

■ A county officer who is compensated wholly or in part from fees is required to pay over to the county, each year, the excess of receipts over and above the amounts allowable for his personal compensation, the compensation of his legally authorized deputies and assistants, and authorized official expenses. Shipp v. Rodes, 196 Ky. 523, 245 S.W. 157; Holland v. Fayette

County, 240 Ky. 37, 41 S.W.2d 651; Commonwealth v. Coleman, 245 Ky. 673, 54 S. W.2d 42.

The questions that are presented in this case, concerning allowable *expenses,* relate to whether the officer may be allowed credit, against the fees received in excess of his maximum personal compensation and the compensation of his authorized deputies, for certain expenses, or whether those expenses must be borne by the officer out of his compensation allowance. There is no question of the county paying the expenses directly out of regular county revenues.

It will be apparent that if the officer is not allowed credit for certain expenses, they must come out of his compensation.

Approximately 35 years ago, the rule in this state seemed to be that a fee officer must personally bear all expenses of his office (other than for authorized deputies), except those which the fiscal court, by express or necessarily implied statutory authority, could have paid directly out of regular county revenues. In Commonwealth v. Nunnelley, 211 Ky. 409, 277 S.W. 506, decided in 1925, it was held that a sheriff could not not be given credit, against excess fees, for automobile expense, stamps, stationery, books, post office box rent, and similar items of expense. However, he was allowed credit for telephone expense, because the statutes required the fiscal court to furnish an office for the sheriff, and the court considered a telephone to be a necessary appurtenance to such office.

■ In more recent years, this Court has departed from the stringent limitations of the Nunnelley case, and has adopted the view that credit may be allowed for expenses that are reasonable in amount, beneficial to the public, and not predominantly personal to the officer in the sense that by common understanding and practice they are considered to be personal expenses. See Holland v. Fayette County, 240 Ky. 37, 41 S.W.2d 651; Commonwealth v. Coleman,

245 Ky. 673, 54 S.W.2d 42; Goodlett **v.** Anderson County, 267 Ky. 166, 101 S.W.2d 421. Support for this view is found in Section 106 of the Kentucky Constitution, which recognizes that "necessary office expenses" are a proper charge against fees.

■ The statutes now recognize that office expenses may be credited, because KRS 64.530 provides that the fiscal court has authority, as to a fee officer, to fix "the maximum amount that the officer may expend each year for expenses of his office." This does not mean a lump sum, blanket allowance, because KRS 64.710 prohibits such allowances except where expressly provided for by statute. See Smith v. Campbell, Ky., 286 S.W.2d 532. We think it means that the fiscal court may fix, *in advance,* the categories of reasonable official expenses that will be allowed and the maximum amount that will be allowed for each category. In such case, the officer still will be required to submit a detailed account of the expenses, with adequate supporting data, in order to obtain credit. It would be desirable for all fiscal courts to exercise the authority given by KRS 64.530, and limit the expenses in advance, or even require that each individual expenditure be approved in advance. However, it is our opinion that the statute does not require this to be done, and where it has not been done the officer yet may receive credit for proper expenses. But in order to receive credit he must not only show the amount and purpose of each expenditure, and that it is reasonable, but must establish that the expenditure is in an allowable category.

In determining whether an expense is in an allowable category, whether the determination is made in advance or when the officer makes his settlement at the end of each year, the fiscal court will be governed by the consideration of whether the expense is official rather than personal in nature. Any abuse of authority will of course be subject to judicial review.

With the foregoing principles in mind, we will undertake consideration of the particular items of expense here in question.

### 2. County Attorney

#### a. Automobile Expense

■ The county attorney claimed credit for automobile expenses for the year 1954, *estimated* at $12 per month; incurred in travel about the county in connection with negotiations for acquisition of highway right of ways, and in locating and interviewing witnesses in civil and criminal cases. The lower court disallowed the claim, relying on Commonwealth v. Nunnelley, 211 Ky. 409, 277 S.W. 506. As hereinbefore pointed out, the strict rule expressed in the Nunnelley case no longer applies.

We think this kind of expense properly may be considered official rather than personal, and is of an allowable category. The lower court erred in holding that under no circumstances could such expense be allowed. However, the court was correct in rejecting the particular claim in question, because it was not properly supported. Because of the difficulty in drawing a clear line between official and personal use of an automobile, and in making a proper allocation of expenses, it is our opinion that a claim for automobile expense should not be allowed without a showing of the purpose and official necessity of each trip, and the distance traveled on each trip.

#### b. Office Rent

■ The county attorney claimed credit for one-half of the cost of office rent for his law office. There was no office available for him in the courthouse, so he handled the county legal business from a private office rented by him, in which he also carried on a private law practice. The lower court disallowed this claim, on the ground there was no statutory duty or authority of the fiscal court to rent an office for the county attorney.

As indicated at the outset of this section of the opinion, it is our view that the allowance of credit for official expenses of

a fee officer does not depend upon express statutory authority for the particular kind of expense. We think that the expense of maintaining an office for the carrying on of the legal business of the county is properly an official rather than a personal expense, and should be allowable on proof of reasonableness and necessity. Here the county did not make an office available in the courthouse, so there was a basis of necessity for the county attorney to rent one. As concerns reasonableness, it appears to be conceded that at least one-half of the business conducted in the county attorney's office was county business, and the amount of rent was reasonable.

It is our opinion that the claim for office rent should have been allowed.

c. Expense of Membership in National Association of County Attorneys, and of Attending County Attorneys' School and Convention.

■ The county attorney paid dues to the National Association of County and Prosecuting Attorneys, and incurred expenses in attending a state school for county attorneys and the annual state convention of county attorneys. His claim for credit for these items was disallowed by the lower court, on the theory that the expenses were personal rather than official in nature.

Under the decisions in Reeves v. Talbott, 289 Ky. 581, 159 S.W.2d 51, and Louisville & Jefferson County Bd. of Health v. Steinfeld, 308 Ky. 824, 215 S.W.2d 1011, these expenses may properly be considered as official and not personal. We think the county attorney was entitled to credit for these expenses.

d. Travel Expense in Connection with County Litigation

■ The county attorney sought credit for travel expenses incurred on a trip to Louisville in connection with a civil case in which the county was interested. The lower court held not only that this was an allowable item of expense, but could have been paid out of the county treasury. We think the court clearly was correct in holding the expense to be an allowable one, but the question of whether the fiscal court could have paid it directly out of the county treasury was not in issue and should not have been adjudicated. The latter adjudication should be omitted.

e. Postage and Stationery

■ An issue was made by the pleadings as to a credit claimed by the county attorney for postage and stationery. The lower court made no adjudication on this issue. We think the claim should have been held allowable, upon submission of suitable supporting data.

f. Law Book

■ An issue was made by the pleadings as to a credit claimed by the county attorney for the cost of a textbook on Legal Medicine. The lower court made no adjudication on this issue. The claim should have been held allowable, upon submission of satisfactory proof as to the necessity for the book for official purposes. Of course the book will be treated as official property.

g. Temporary Stenographic Work

■ Another issue upon which the lower court made no adjudication concerns a claim by the county attorney of credit for the cost of temporary stenographic assistance during an illness and vacation period of the regular stenographer. Under KRS 69.330, a stenographer was furnished the county attorney at county expense. We think that the expense of a substitute during necessary temporary absences of the regular stenographer clearly constituted a proper official expense, and the judgment should have declared that the expense was an allowable credit.

### 3. Sheriff

#### a. Automobile Mileage

The sheriff claimed credit for automobile mileage for 1954 in the amount of $1,680, computed on the basis of 2,000 miles per month at the rate of seven cents per mile. The lower court disallowed the claim, on the ground that if the mileage was for patrol work it was reimbursed by the state under KRS 70.170, and if it was for pursuit of criminals, making arrests, or collection of taxes it was not an allowable expense under the decision in Commonwealth v. Nunnelley, 211 Ky. 409, 277 S.W. 506.

Under KRS 70.170 the sheriff is allowed out of the *state treasury* an amount not to exceed $1,500 per annum for mileage travelled in patrol work, computed at the rate of seven cents per mile. This is stated to be a reimbursement of expenses, and not compensation. However, for accounting purposes the sheriff should list the amount received as part of the receipts of his office, and he should make an appropriate record of the travel for which he was so reimbursed.

Under KRS 64.095 the sheriff is required to be paid, by the litigants, his mileage expense in the service of a notice, subpoena or summons, at the rate of seven cents per mile. Here again, he should list the amounts received, and itemize the travel involved.

We think the lower court correctly disallowed the particular claim in question, because, first, the claim was merely an estimate, without any indication of the purpose and necessity of each trip, and the distance traveled on each trip; and, second, because it could not be ascertained from the records of the sheriff whether the claim represented mileage for which he already had been reimbursed under KRS 70.170 or 64.095. However, we think that the court erred in holding that the sheriff could in no event be allowed credit for necessary mileage in performing official services other than those for which he received reimbursement under KRS 70.170 or 64.095. It is our opinion, as hereinbefore expressed with reference to the county attorney, that reasonable and necessary mileage expenses may be allowed as a credit upon presentation of a properly itemized and documented claim.

#### b. Interest

The sheriff claimed credit of $200 for an item simply designated as "interest." The lower court disallowed this item, and we think properly so.

The appellants agree that the particular claim should have been disallowed, because no explanation or justification was submitted, but they contend that upon a proper showing, and particularly if the loan is approved in advance by the fiscal court, a fee officer should be allowed credit for interest upon money borrowed to meet current operating expenses. We think that to accept this contention would amount to giving the officer all of the benefits of the fee system, and none of the burdens. A fee officer obligates himself to run the office with the fees that he takes in. If there is a slack period during which the current fees are not enough to meet the current expenses, it is the officer's personal obligation to keep the office running. If he is required to borrow money, the interest is his own, personal expense, and not an official expense.

### 4. Jailer

#### a. Automobile Expense

The jailer claimed credit for "automobile expense" in the amount of $704.91 (not itemized). The lower court disallowed the claim.

The jailer maintains that the expense was necessary in securing food, clothing, medicine and other supplies for the jail, in delivering prisoners to the various courts, and in assisting in the apprehension of escaped prisoners.

Our opinion on this question is the same as hereinbefore expressed with regard to the allowance of automobile expense for the county attorney. However, as concerns the use of an automobile in securing food and other supplies for the jail, we think the jailer has a special burden of showing that the supplies could not have been obtained at the same price upon telephone order and delivery by the supplier. This goes to the reasonableness and necessity of the claimed expense.

### b. Miscellaneous Expense

 The jailer claimed credit for an item of $12.81 as "miscellaneous expense." This was disallowed by the lower court, and properly so, there being no explanation or justification of the item.

### c. Expense of Food Purchased by the Jailer from his own Farm

The jailer claimed credit for expenses for food in the amount of $8,944.45. Objection was made to the allowance of this item because it appeared that a substantial amount of the food was purchased by the jailer from a farm owned by him individually. The lower court held that the expense was allowable, on the theory that so long as the food expense did not exceed the fees paid by the county for keeping and dieting the prisoners, it was immaterial where or at what price the food was purchased.

 Under KRS 64.150, prior to a 1954 amendment, the jailer was entitled to be paid out of the county treasury, for keeping and dieting prisoners confined for an offense other than a felony or contempt of court, the sum of $1.25 per day for each prisoner. The 1954 amendment, effective in June 1954, raised the allowance to $1.75 per day. (There is a provision in the statute, as amended, for an allowance of a fee "equal to the reasonable cost of providing such services, not exceeding, per day..... 1.75," but it appears from an examination of the history of the statute that this pro-vision was intended to apply only in counties containing a city of the first class.)

It is asserted in the pleadings that the actual fee paid by Warren County, in 1954, was 45 cents per day, and that the amount expended by the jailer for food did not exceed this amount.

We think the question is simply one of the reasonableness of the expenditures for food. Obviously, if the jailer purchases food from himself at an excessive price, he will receive a hidden profit at the expense of the county. Any difference between the fee paid for dieting the prisoners, and the reasonable cost of the food, constitutes *compensation* to the jailer. So, contrary to the opinion of the lower court, it does make a difference how much the jailer expends for food.

 It is our opinion that when a jailer purchases food from himself, the expense should be treated as prima facie invalid. The burden then is upon the jailer to show convincingly that the price paid did not exceed the prevailing price from normal suppliers. Records should be produced to show the date of each purchase, the product and quantity, and there should also be satisfactory evidence concerning *quality*, which is an important controlling factor in the price of food.

The lower court erred in unconditionally allowing credit for the food expense. The expense should be held not allowable unless the reasonableness is proved in the manner above specified.

### 5. Magistrates

#### a. Attorney Fees

 One of the magistrates claimed credit for $300 attorney fees incurred in the defense of an action brought against him, by a person against whom a prosecution for a criminal offense was pending in the magistrate's court, to enjoin the prosecution on the ground that the magistrate had

no jurisdiction. The lower court disallowed the claim, on the ground that it was the duty of the county attorney, under KRS 69.210, to have represented the magistrate in the litigation, and there was no showing that the county attorney had refused or was unable to do so. We think this adjudication was correct. Cf. Shannon v. Ray, 280 Ky. 31, 132 S.W.2d 545.

### b. Expense of Travel from Home to Courthouse

■ Two of the magistrates claimed credit for "emergency trips" from their homes to the courthouse, during other than normal business hours, for the purpose of holding magistrate's court. The lower court disallowed the claims. This was correct, because in common understanding, both in the field of government and in private business, the expense of travel from home to office or place of employment is considered to be a personal expense.

### c. Telephone and Office Supplies

■ Two of the magistrates claimed credit for telephone expense, including long distance calls, and for office supplies. The lower court held that these claims were allowable. As to one of the magistrates, the claims were supported by checks, and we agree that these were allowable. However, the other magistrate claimed an *estimated* $10 per month for office supplies, and a gross sum of $82 for long distance telephone calls. Neither of these claims was supported by any documents or other data. In the absence of proper documentation they should not be allowed. The claim for long distance calls seems questionable on its face.

### III. Deputies and Assistants

#### 1. General Considerations

Questions concerning allowances for the compensation of deputies or assistants are presented as to two of the officers of Warren County. Basic problems involved are whether the fiscal court is required to fix *in advance* the number and compensation of deputies; whether the fiscal court can authorize additional deputies when a specific limitation on the number is fixed by statute; and whether the fiscal court can authorize a deputy or assistant for a particular officer when there is no express nor necessarily implied statutory authorization for such officer to have a deputy or assistant.

Section 246 of the Constitution of Kentucky limits the compensation of public officers, "exclusive of the compensation of *legally authorized* deputies and assistants which shall be fixed and provided for by law" (our emphasis).

Prior to enactment of the 1950 Salary Act, KRS 64.480 to 64.760, it was held that the fiscal court had no authority to fix in advance the number and compensation of deputies of a county fee officer, but after the expenditures had been made could raise the question of their reasonableness by bringing an action to recover for the county the amount considered to be excessive. Farris v. Nichols, 286 Ky. 196, 150 S.W.2d 484.

■ The 1950 Salary Act made a radical change in the law. KRS 64.530, a part of that Act, contains these significant provisions:

> " * * * the fiscal court of each county *shall fix* the compensation of every county officer and employe. For the purposes of this section, * * * deputies or assistants of county officers shall be deemed to be county employes * * *. In the case of officers compensated from fees, or partly from fees and partly by salary, the fiscal court shall fix the maximum compensation that the officer may receive, from both sources, and also *shall have authority to fix* the number of deputies and assistants, and the compensation thereof * * *. In the case of county officers elected by popular vote, * * * the annual compensation of the officer and

of his deputies and assistants *shall be fixed* by the fiscal court not later than the first Monday in May in the year in which such officers are elected, and shall not be changed during the term." (Our emphasis.)

KRS 64.730 provides:

"Where any public body is required by KRS 64.480 to 64.760 to fix the compensation of an officer, and of his deputies and assistants, * * * not later than the first Monday in May in the year in which such officers are elected, and the body fails to do so, the compensation of the officer, and of his deputies and assistants, shall be the same as for the preceding term."

There is some ambiguity in KRS 64.530, in that in one place it provides that the fiscal court *shall fix* the compensation of deputies, and in another place requires that this be done not later than the first Monday in May in the election year, but in a third place states that the fiscal court *shall have the authority to fix* the number and compensation of deputies.

Considering the entire Act as a whole, we think the conclusion is inescapable that the legislature intended that both the number and the compensation of deputies be fixed by the fiscal court before the first Monday in May of the election year, and that if not so fixed the number and compensation will be limited by KRS 64.730 to that of the preceding term. In no other way can effect be given to the obvious purpose of the Act to prevent an increase in expenditures for deputy hire after election.

As concerns the question of whether the fiscal court may, in fixing the number of deputies, allow a number in excess of that specified by a particular statute, we think the answer depends upon whether the statute merely makes provision for a specified number of deputies, or actually places a restriction on the number. In the former case the fiscal court may allow additional deputies; in the latter case it may not.

This was substantially the holding in Shamburger v. Tierney, 314 Ky. 459, 236 S.W.2d 279.

We also have the question of whether the fiscal court may authorize a deputy or assistant for an officer when there is no statutory authority, express or necessarily implied, for such officer to have a deputy or assistant. We think the answer to this question is found in KRS 64.550, which provides:

"Nothing in KRS 64.480 to 64.760 is intended to authorize the fiscal court of any county to create any office or make any employment not authorized by law."

In view of the provisions of KRS 64.550, and the long established legislative policy in this state of authorizing deputies by specific statute when they are deemed necessary, it is our opinion that the fiscal court has no authority under KRS 64.530, or otherwise, to authorize a deputy or assistant for an officer unless there is statutory recognition of the right of the particular officer to have deputies or assistants.

In the light of the foregoing principles, we will consider the specific questions that are presented concerning deputies and assistants for the jailer and for the magistrates who hold court.

## 2. Jailer

During the year 1954 the jailer of Warren County employed two male deputies and a matron. At that time KRS 71.060 provided that "any jailer may, with the approval of the *county court,* appoint *one* deputy" (our emphasis). However, as hereinbefore pointed out, KRS 64.530 provided that the *fiscal court* should fix the number and compensation of deputies and assistants of county fee officers. In his answer in this lawsuit, the jailer alleged that the two male deputies "have been authorized" by the fiscal court and their compensation "has been approved" by the fiscal court; that "while no official order has been

entered by the fiscal court authorizing the employment of a matron, the fiscal court recognizes the necessity for same and has tacitly approved of the employment of a matron," and that the salary paid to the matron is reasonable.

The lower court held that the jailer could be given credit for the compensation paid to the deputies and matron.

A difficult question is presented. Under the principles hereinbefore discussed, we think the fiscal court would have had authority to allow the jailer deputies and assistants in addition to the one provided for in KRS 71.060; however, the fiscal court was required to fix the number and compensation on or before the first Monday in May in the year of election, which was 1953. See KRS 64.530. While the jailer's answer alleges that the two male deputies were "authorized" and their compensation was "approved" by the fiscal court, there is no allegation that this was done before the first Monday in May in 1953. This would seem to require a holding that the jailer was limited to one deputy, and that deputy's compensation was limited to that paid for the preceding term. See KRS 64.730. However, if it should be made to appear that an extra deputy, and a matron, had lawfully been authorized for the preceding term, then these positions, with the compensation paid for such preceding term, would be allowable during the term that commenced in 1954, under KRS 64.730.

It is our opinion that compensation for the deputies and matron should not be allowed except upon the conditions and to the extent above indicated. Additional pleadings, and proof if necessary, should be permitted to develop the controlling facts.

We call attention to the fact that KRS 71.060 was amended in 1956. Under the amendment, a jailer is entitled to two deputies, and a matron, and "with the approval of the *county court,* may appoint additional deputies" (our emphasis). Since this statute now vests the power to author-

ize deputies in the *county court,* it is our opinion that the *fiscal court* no longer has authority under KRS 64.530 to fix the *number* of deputies for the jailer. However, it would seem that the fiscal court still has the power to fix the *compensation* for *all* deputies of the jailer, and for the matron, and that the compensation should be fixed on or before the first Monday in May in the election year. A question may arise as to whether the *county court* may authorize additional deputies after that date, but that question is not before us in this case and we will not attempt to answer it.

### 3. Magistrates

Two of the magistrates, who held court, each employed an office assistant, and they claimed credit against excess fees for the annual compensation paid these assistants. The lower court held that the claims were allowable.

There is no express or necessarily implied statutory authority for the position of office assistant or clerk for a magistrate. For the reasons stated at the outset of this part of the opinion, we think that the fiscal court had no authority to authorize such positions, and that the claims are not allowable.

### IV. Miscellaneous

### 1. Excess Fees of Sheriff

The lower court was asked to make an adjudication as to whether certain excess fees of the sheriff should be paid to the county or to the county school district. The court declined to do so, because the county board of education was not a party to the suit. We think the court properly refused to rule on the question in the absence of the board of education.

### 2. County Clerk's Bookkeeping Methods

A question was raised below concerning the methods of bookkeeping employed by the county court clerk. It ap-

pears that the clerk simply deposited all of his receipts in a special bank account, without keeping any detailed records of the sources or amounts of the receipts, and wrote checks for disbursements. The checks constituted the only record of disbursements. No issue is made as to the allowability of any of the disbursements; the only contention is that the clerk should be ordered to keep more satisfactory records and accounts. The lower court held that no actual controversy existed, and declined to make any adjudication. However, the court pointed out that under KRS 67.-080(7) and KRS 61.290 there are means by which proper accounts and records may be compelled to be kept.

Since no specific relief was sought with respect to the county clerk, it is difficult to see what particular benefit would be accomplished by a mere declaration that the clerk's records and accounts were inadequate. However, the clerk's methods of attempted bookkeeping deserve to be criticized severely, and we think it would be proper for the judgment to state that it is the duty of the fiscal court to require the clerk to keep adequate records and accounts.

To the extent that the judgment conforms with this opinion it is affirmed; in all other respects it is reversed, with directions to enter judgment in conformity with this opinion.